## UNITED STATES DISTRICT COURT FOR
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DR. EUNG WONG KIM et. al.,** ) | |
| ) | |
| *Plaintiffs,* ) | |
| v. ) | Civil Action No. 1:23-cv-1101 |
| ) | |
| **DP CAPITAL LLC, et. al.** ) | |
| ) | |
| *Defendants.* ) | |

## <u>AMENDED COMPLAINT</u>

COME NOW Plaintiffs KIM GEORGIA AVE, LLC ("Kim Georgia Ave") and EUNG KWON KIM ("Dr. Kim") (collectively, "Plaintiffs"), by counsel, and hereby file this Complaint against Defendants DP CAPITAL LLC, WCP FUND I, LLC, WCP 4910 GEORGIA AVE NW LLC, 4910 GEORGIA AVE HOLDINGS LLC, COLOMA RIVER HOLDINGS LLC, CHARLES PARET, , and DISTRICT TITLE, A CORPORATION (collectively, "all Defendants"), and in support thereof, provides as follows:

## <u>INTRODUCTION</u>

This case is one of coordinated acts by the defendants to induce Plaintiffs to purchase three condominium units for $600,000 within a proposed residential development to be located at 4910 Georgia Ave, NW. At the time this purchase was made (2020), there was an intention by the developer, 4910 Georgia Ave Holdings LLC, to hold and convert the purchase funds without ever transferring title of the units to Plaintiffs. In fact, 4910 Georgia Ave Holdings LLC and its associated agents used those same funds ($600,000) as the closing costs for obtaining a loan on the property, which later became the subject of a foreclosure by Washington Capital Partners and its associated entities after the loan allegedly defaulted.

This foreclosure and resulting denial of Plaintiffs' ownership rights to the condominium units occurred despite the Defendants' knowledge of the Plaintiffs' purchase of the condominium units as a stand-alone property interest, not as an "investment" in the corporate structure of 4910 Georgia Ave Holdings. The Court should sanction Defendants for their dishonest conduct, and find that Plaintiffs are victims of both fraud and breach of fiduciary duty, who should be reimbursed for the lost value of the funds, as well as all associated costs, Finally, the Defendants should disgorge any funds which they illegally converted and/or utilized.

## PARTIES & JURISDICTION

1.    Plaintiff EUNG KWON KIM ("Dr. Kim"), is an individual residing in North Potomac, Maryland, who funded the purchase of three condo units of the subject property as an individual and on behalf of his holding company, Kim Georgia Ave, LLC.

2.    Plaintiff KIM GEORGIA AVE, LLC ("Kim Georgia Ave") is a limited liability company incorporated in Virginia, which was used by Dr. Kim in the purchase of the three condo units to be located on the subject property. Dr. Kim, a resident of Maryland, is the sole member of Kim Georgia Ave, which was formally incorporated on April 3, 2023.

3.    Defendant DP CAPITAL LLC ("DP Capital"), is a Virginia limited liability, also known as "Washington Capital Partners," with a principal place of business at 8401 Greensboro Drive, Suite 960, McLean, VA, 22102.  Based on information available to the Plaintiffs, Daniel Huertas, a resident of Virginia, is the only member.

4.    Defendant WCP FUND I, LLC ("WCP Fund I"), is a Delaware limited liability company that engages in a lending business in the District of Columbia and is a related company to Washington Capital Partners, with a principal place of business at 2815 Hartland Road, Suite

200, Falls Church, VA 22043. Based on information available to the Plaintiffs, Daniel Huertas, a resident of Virginia, is the only member.

5.      Defendant WCP 4910 GEORGIA AVE NW LLC ("WCP 4910 Georgia Ave") is a District of Columbia limited liability company used by WCP Funds I to develop real estate, namely the subject property in this matter. It has a principal place of business at 2815 Hartland Road, Suite 200, Falls Church, VA 2204. Based on information available to the Plaintiffs, the sole member of this entity is Victoria Junkins, a resident of Virginia.

6.      Defendants DP Capital/Washington Capital Partners, WCP Fund I, WCP 4910 Georgia Ave, and other related companies under DP Capital will hereafter be collectively referred to as the "WCP Entities" or "WCP."

7.      Daniel Huertas ("Huertas") is listed as the Chief Executive Officer of Washington Capital Partners on its website and controls all of the WCP Entities.

8.      Russell Drazin is a lawyer and the managing member of the law firm Pardo Drazin Holdings LLC a/k/a Pardo Drazin LLC (collectively, "Drazin"). Drazin has served as legal counsel for the WCP Entities and other financers of the subject property since at least 2018.

9.      Defendant 4910 GEORGIA AVE HOLDINGS LLC ("4910 Georgia Ave Holdings" or the "Developer") is a District of Columbia corporation with a principal place of business at 1629 K St, NW, Suite 300, Washington, DC 20006. It is the original developer of the project at 4910 Georgia Avenue, NW, Washington, DC, and sold condominium units to Dr. Kim in July 2020. Based on information available to the Plaintiffs, Defendants Paret, a resident of Virginia, and Mel Melaku Negussie, a resident of Washington, DC are the members of this LLC.

10.     Defendant COLOMA RIVER HOLDINGS LLC ("Coloma River") is a capital investment firm with a principal place of business at 1120 Congress St, NE, Washington, DC

20002, which holds an investment in the Developer. Based on information available to the Plaintiffs, Defendant Paret is the sole member of this LLC.

11.    Defendant CHARLES PARET ("Paret") is an individual that resides at 1120 Congress St, NE, Berryville, VA 22611. He is a principal in the Developer.

12.    .

13.    Defendant DISTRICT TITLE, A CORPORATION ("District Title") is a District of Columbia corporation that provides settlement services with a principal place of business at 1775 Eye Street, NW, Suite #560, Washington, DC 20006.

## VENUE AND JURISDICTION

14.    Subject matter jurisdiction exists as diversity of citizenship exists between the parties and there is a sufficient amount in controversy. *See* 28 U.S.C. § 1332.

15.    Venue is proper under 28 U.S.C. § 1391 as the transaction and property in question are located in Washington D.C. and Defendants are subject to personal jurisdiction here.

16.    This Court possesses personal jurisdiction over all the parties, as each party individually has agreed to submit to the jurisdiction of the court in all matters related to the recovery under the promissory note as will be articulated *infra*.

## STATEMENT OF FACTS

### The Property

17.    The subject property is located at 4910 Georgia Ave, NW, Washington, DC 20011, which is at Lot 18 in Square 2926 (the "Property").

18.    In 2018, the Property was the subject of an "Inclusionary Development Covenant filed, by "4910 Georgia Avenue LLC," an apparent predecessor in interest to 4910 Georgia Ave Holdings, which indicated "Inclusionary Zoning Compliance" with requirements of the District of

Columbia government, thus paving the way for future condominium construction at the Property. *See* EXHIBIT ("Exh.") A, attached hereto.

19.     Since 2018, the Property has been subject to development through a *de facto* partnership between Paret and Huertas as explained *infra.*

20.     This partnership has been effectuated through the acts of both the individual defendants and their respective organizations as explained *infra.*

21.     For example, Paret controls Coloma River and shares control of 4910 Georgia Ave Holdings with Negussie (hereafter, Paret and his associated entities are referred to collectively, as "the Developerss")

22.     At the relevant time of the sale to Plaintiffs, as discussed *infra*, 4910 Georgia Ave Holdings was the title record holder of the Property.

23.     As stated infra, Huertas controls Washington Capital Partners and all the associated WCP Entities. Specifically involved in this Property were DP Capital, WCP Fund I, and WCP 4910 Georgia Ave. WCP Fund I has provided financing for the Property as described *infra*.

24.     Through a deed dated September 28, 2018, 4910 Georgia Ave Holdings became the fee simple owner of the Property, which was under-developed land at that time being targeted for residential redevelopment.

25.     On August 22, 2019, WCP Fund I recorded an "Assignment of Deed of Trust," dated October 10, 2018 against the Property. The document provides that Huertas, as trustee for the benefit of WCP Fund I, held a lien against the Property secured by a deed of trust and that all his interests held in the Property were transferred to 1Sharpe Opportunity Intermediate Trust.

### Huertas and Paret Form a De Facto Partnership

26.    On September 20, 2019, Huertas (individually and/or on behalf of the WCP Entities) offered a *de facto* partnership with Paret (individually and/or on behalf of the developer entities, including 4910 Georgia Ave Holdings) (the "Partnership") to develop the Property as a condominium project for residential use. *See* Exh. B.

27.    Exhibit B clarified the responsibilities of the partners for future development and the disbursement of profits, which would be 51% for Huertas and 49% for Paret.

28.    Under the Partnership, Paret (as an individual and on behalf of his related entities) would manage the day-to-day operation of all projects, while Huertas (as an individual and on behalf of his related entities) would manage the financial aspects related to the Property.

29.    Upon information and belief, the September 20, 2019 offer by Huertas was accepted by Paret and represented a *de facto* partnership going forward. From that date forward, Paret coordinated the sale of the condo units on the Property with Huertas' approval and the presumed funding from the WCP Entities.

30.    As provided under the operating agreement of 4910 Georgia Ave Holdings, *inter alia*, the business of 4910 Georgia Ave Holdings was to develop and sell all of its assets, *i.e.*, the condo units described *infra*. *See* Exh. C.

31.    Upon information and belief, all parties to the Partnership, including Huertas and the WCP Entities, received copies of the operating agreement of 4910 Georgia Ave Holdings and knew that selling condo units was the business of 4910 Georgia Ave Holdings.

32.    In June 2020, 4910 Georgia Ave Holdings on behalf of the Partnership began seeking purchasers of condominium units to be located at the Property. At that point, the Property itself was not built out, so the units were being purchased for future construction.

33.    Notably, at that time (June 2020), neither 4910 Georgia Ave Holdings nor any other party had recorded a condominium instrument relating to the Property, other than the Inclusionary Development Covenant. *See* Exh. A.

<u>**Sale of Condo Units to Plaintiffs in July 2020**</u>

34.    In the summer of 2020, the Developers sought to begin redevelopment of the Property, *i.e.*, with funds "borrowed" from the WCP entities. Notably, at that time, demand for residential construction had risen significantly as interest rates had dropped to record lows.

35.    On or around July 18, 2020, Plaintiffs were virtually introduced to the Developers through an email about the opportunity to purchase some specified condominium units at the Property.

36.    In these communications, Shah's company, SIG, was specifically referred to by its correct name, "Shah Investment Group LLC" in draft purchase agreements.

37.    On July 20, 2022, the Developers emailed their lawyer, copying Plaintiffs, saying that the "Shah Investment Group LLC" was going to bring in funds for a pre-sale agreement for certain properties, one of which being the subject Property.

38.    In this email, the Developers said, "We need help in having you structure the pre-sale agreements. This $3M is not going to be a LOAN; it's going to be a purchase of units in the building. Funds coming in will be treated for Pre-Sale."

39.    As such, all relevant parties understood this transaction to be for purchasing real property assets.On or about July 29, 2020, Paret and Negussie held a meeting for interested buyers —where they were first introduced to Dr. Kim through a relationship with Dr. Kim's son-in-law— and, at the meeting, offered Dr. Kim the "opportunity" to buy three condo units at "half price," prior to construction commencing.

40.     Specifically, Paret, via 4910 Georgia Avenue Holdings, offered Plaintiffs three (3) units of property to be constructed at 4910 Georgia Avenue (collectively, the "Condo Units"), for the aggregate purchase price of $600,000, which was (again) represented as half the market value.[1] At the time, Paret represented to Dr. Kim that he had "forty-eight hours" to close the deal.

41.     At that meeting, Dr. Kim was told that the funds paid to purchase the Condo Units would be protected by insurance and  not released until certain construction benchmarks were met.

42.     Relying on these representations, Dr. Kim borrowed $600,000 from a personal line of credit so that he had the funds readily available.

43.     Notably, at that time, the Inclusionary Development Covenant confirmed that three condominium units had been approved by the D.C. City government. *See* Exh. A, at 19.

44.     In offering the Condo Units to Plaintiffs, Paret represented that (i) any loan affecting the title or status of the deed to the Property would be paid off before the day of closing with Dr. Kim on his condo purchases, and (ii) if there was any issue with the seller's representations, Plaintiffs would be entitled to both monetary damages as well as specific performance to receive the Condo Units. *See, e.g.*, Exh. D.

45.     Plaintiffs detrimentally relied on these representations, as well as those other statements referenced herein, in making his purchase of the Condo Units.

46.     As of July 31, 2020, none of the WCP entities held a mortgage or other loan encumbrances were held against the Property.[2]

---

[1] The Condo Units were sold to Plaintiffs as having the following land description: "Lot # 0018 of Square 2926 subdivision 4910 Georgia Ave NW, 3 Units (Street Address) Washington (City), DC 20011 (Zip code) together with all fixtures, landscaping, improvements, and appurtenances."

[2] Cornerstone Capital LLC's loan remained recorded against the Property; however, a certificate of satisfaction for the loan was filed a few days after the sale to Plaintiffs, on August 5, 2020.  Notably, Cornerstone Capital's trustees, one of whom was Drazin (the lawyer for the WCP Entities), recorded this certificate of satisfaction.

47.     Relying upon this fact, Dr. Kim obtained funding to purchase the Condo Units and provided said funds to Developers' designated title company, Defendant District Title, for purposes of purchasing the Condo Units.

### The Closing and Terms of the Sale

48.     On July 31, 2020, the date of closing ("the Closing") for the sale of the Condos to Plaintiffs, Paret visited Dr. Kim at the latter's office in Maryland where he represented that he was acting on behalf of the seller 4910 Georgia Ave Holdings.[3]

49.     At that time, Paret confirmed receipt of the funds in full from Plaintiffs.  (Those funds had already been wired by Dr. Kim to District Title to be held in escrow).

50.     He further presented Dr. Kim with the sale agreement and indicated that he would immediately leave Dr. Kim's offcie to record the transfer of interest of the Condo Units to Plaintiffs in the public records.[4]

51.     The sale agreement is titled, "New Construction Pre-Sales Agreement" (the "Sales Agreement"), and provides that 4910 Georgia Ave Holdings, as the seller, would transfer three units of the Property to Plaintiffs, as the buyer. *See* Exh. D.

52.     The Developers represented and warranted to Plaintiffs throughout the Sales Agreement that the Condo Units would be sold to Plaintiffs by general warranty deed, and that 4910 Georgia Ave Holdings had good and marketable title to the Property free of any liens and encumbrances. *See, e.g.*, Exh. D §§ 4(B), 5(A).

---

[3] Because this was during the COVID-19 Pandemic, in-person attendees during transactions at this time were limited when possible so Huertas did not attend the Closing.

[4] Paret also gave Plaintiffs a deed of trust; however, this document is irrelevant as funds had already been provided and no trust was created.

53.     The Developers further represented and warranted to Plaintiffs that they would not sell, transfer, assign, or otherwise dispose of all or part of the Property or any interest in the Property, without the consent of Plaintiffs.

54.     Paret and his related entities further represented and warranted to Plaintiffs that the Property, or more specifically the interest owned by Plaintiffs, could not be assumed, assigned, or title taken, without the express written approval of Plaintiffs.

55.     Plaintiffs reasonably relied on said representations that the Condo Units would be sold to Plaintiffs, free of any defects in title (or that any defects in title would be cured upon the sale of the Condo Units to Plaintiffs), *inter alia*.

56.     Based on Plaintiffs' reliance on Defendants' representations, Plaintiffs proceeded with the Closing and had paid over the agreed funds, which were to be kept in escrow until the construction benchmarks had been met.

57.     At the Closing, Paret (who signed on behalf of 4910 Georgia Ave Holdings) and Plaintiffs (through Dr. Kim) signed the Sales Agreement, which stated the terms of the parties' agreement: to wit, the Plaintiffs purchased "4910 Georgia Ave, NW, Three Units."[5] Exh. D.

58.     On July 31, 2020, upon the execution of the Sale Agreement, Plaintiffs became the sole and rightful owner of the three Condo Units in fee simple.[6]

59.     However, because Defendants failed to effectuate a condominium instrument, the Defendants effectuated a sale to Plaintiffs for property that did not yet exist.

---

[5] In keeping with the representation that the Condo Units were "half price," the Sales Agreement stated that the transaction was contingent upon the Units appraising for "$400,000" each. *See* Exh. D at para. 2(A).

[6] The only remaining defect in title to the Property was cured by a certificate of satisfaction filed a few days after Closing. *See supra*, Note 2.

60.    Upon information and belief, Huertas and the WCP entities, by virtue of their role in the Partnership, were aware of the sale of the Condo Units to Dr. Kim and the proceeds which were received therefrom.  They did not object or raise any concerns.

### The Willful Lack of Recording

61.    After the Sales Agreement was signed by both parties, Paret informed Dr. Kim that he was heading directly to the Office of the Recorder of Deeds for the District of Columbia to record Plaintiffs' ownership.

62.    Neither Paret nor anyone else recorded Plaintiffs' interest in the Property.

63.    Plaintiffs did not learn of this lack of recording for the Condo Units until after the foreclosure of the Property as described herein.

64.    Upon information and belief, another purchaser ("the Second Purchaser") also attended Paret and Negussie's presentation on July 29, 2020 relating to the Property, also purchased three (3) condo units from 4910 Georgia Ave Holdings on July 31, 2020 for the aggregate sum of $600,000, and also had his purchase left unrecorded.

65.    The Developers did not "forget" to record the instruments protecting their own purported interests in the Property in the days following the execution of the Sale Agreement—rather, any such omission was intentional.

### The Subsequent Transactions with Plaintiffs' Funds and the Property

66.    Upon information and belief, all Defendants were aware that Plaintiffs, as of July 31, 2020, were the rightful purchasers of the Condo Units, and that 4910 Georgia Ave Holdings did not have the right to convey the Plaintiffs' interest in the Condo Units (or the Property) without Plaintiffs' permission.

67.    Regardless, Defendants retained Plaintiffs' $600,000 without recording the transfer of title of the Condo Units to Plaintiffs.

68.    Upon information and belief, this unauthorized use of funds was part of a scheme to "finance" the Property and put the Plaintiffs' interest at risk, without any notice or consent.

69.    In furtherance of this scheme, the Developers, with District Title's involvement, took the following actions (or omissions):

   a.    Did not record the Sale Agreement for the Condo Units;

   b.    Disbursed Plaintiffs' funds held by District Title without Plaintiffs' knowledge and without fulfilling terms of the agreement;

   c.    Placed the newly acquired $600,000 of Plaintiffs' funds and $600,000 of the Second Purchaser into a separate escrow account with District Title; and

   d.    Utilized the newly acquired funds to cover the closing costs needed to obtain financing from WCP Fund I.  *See infra.*

70.    In early August 2020, *i.e.*, after the Plaintiffs' purchase and with evident knowledge of same, the WCP Entities had Drazin, as Trustee, prepare documents to convey the **commercial aspects** of the Property from 4910 Georgia Ave Holdings to WCP Fund I in exchange for purportedly financing the construction of the Property.

71.    Notably, the residential aspects of the Property, including Plaintiffs' Condo Units, were not included by any parties to this matter in conveyances after July 31, 2020.

72.    In the first week of August 2020, Drazin prepared two Deeds of Trust for the benefit of the WCP entities as lender:

   a.    A Commercial Deed of Trust for $852,872.00 (the "$852K WCP Deed of Trust"), the note for which is attached hereto as EXHIBIT E.1 (containing the word

"commercial" in its title), and the $852K WCP Deed of Trust attached as EXHIBIT E.2; and

b. A Commercial Deed of Trust for $10,861,300.00 (the "$10.86M WCP Deed of Trust"), the note for which is attached hereto as EXHIBIT F.1 (containing the word "commercial" in its title), and the $10.86M WCP Deed of Trust attached as EXHIBIT F.2; and

c. Each of these documents was backdated to July 31, 2020, *i.e.*, the date of Plaintiffs' closing, despite being signed in August of 2020.

73.    As stated *infra*, these deeds of trust were deliberately backdated in order to be prior in time to the Plaintiffs' Sale Agreement, thereby indicating Drazin's (and WCP's) knowledge of the same. The intent of this act was to effectively "void" Plaintiffs' purchase of the Condo Units and/or subordinate it to the financing which occurred in August 2020.

74.    **On August 5, 2020,** Paret, Negussie, and Huertas, on behalf of their respective entities, with the assistance of Drazin, executed a HUD-1 showing the loan to 4910 Georgia Ave Holdings from WCP Fund I, which was prepared by District Title and executed for the $10.86M WCP Deed of Trust transaction (the "HUD-1"), attached as EXHIBIT G.

75.    The HUD-1 is signed by each of Paret, on behalf of the borrower, and Huertas, on behalf of the lender.

76.    Notably, the HUD-1 reflects a $50,000 commission to a broker, DH Partners, LLC, responsible for facilitating the sale of the Condo Units to the Plaintiffs. It also reflects a "closing cost" payment made by Borrowers (i.e. 4910 Georgia Ave. Holdings) in the amount of $1.253 million, i.e. the condo payments made by Plaintiffs and the Second Purchaser.

77.     In other words, the Kim Purchase (and the Second Purchase) was disguised on the HUD-1 to appear as if it was part of the larger WCP refinancing.

## The April 2022 Foreclosure

78.     In 2021-2022, Paret and Huertas took actions to hide their entities' interests in the Property, partially due to litigation that had been filed regarding other projects.

79.     Such actions included conveying (or concealing) interests in the Property that had been otherwise sold to *bona fide* purchasers, such as Plaintiffs. These actions included foreclosure of property interests, such as those held in the Property.

80.     To that end, Huertas, through the WCP Entities and with Drazin's assistance, recorded the Assignment of Deed of Trust on April 18, 2022, in which WCP Fund I assigned its Property interest to SF NU, LLC ("SF NU"). *See* Exh. H.

81.     This document was backdated to October 20, 2020.

82.     Three days later, on April 21, 2022, Huertas recorded the Deed of Appointment of Substitute Trustee, which replaces himself with Drazin as the trustee over the $852K WCP Commercial Deed of Trust Note.[7]

83.     Also on April 21, Huertas, with the various WCP Entities and Drazin's assistance, recorded the Affidavit of ***Non-Residential*** Mortgage Foreclosure, which was signed by Christina Araujo, Director of Finance of WCP Fund I, on behalf of SF NU, LLC. *See* Exh. I.

84.     The next day, on April 22, 2022, SF NU LLC recorded the Notice of Foreclosure Sale of Real Property or Condominium Unit, signed by Drazin as trustee. *See* Exh. J.

---

[7] The Appointment of Substitute Trustee notes that this is a "***Commercial*** Deed of Trust Note," despite the fact that the Property was specifically marketed to Dr. Kim and sold as <u>residential</u> condo units.

85.    The "Notice" purports to state that 4910 Georgia Ave Holdings owes $1,001,840.33 under the $852K WCP Commercial Deed of Trust Note which was in default and, therefore, the Property was subject to foreclosure.

86.    Plaintiffs received no notice of the foreclosure, despite Huertas and Drazin's awareness of Plaintiffs' ownership interest.

87.    As Trustee, Drazin conducted the foreclosure sale, without any notice to Dr. Kim, on May 24, 2022.

88.    As a result of that sale, a WCP-associated entity "bought" the Property at a significant discount. The price paid was $10,000 plus $8,030,468.70 to pay off the Deed of Trust with interest that was held by Huertas as trustee for WCP Fund I.

89.    On September 15, 2022, Drazin, as Trustee, recorded the "Substitute Trustee's Deed, which has an effective date of August 19, 2022.  *See* Exh. K.

90.    This Substitute Trustee's Deed purports that the Property was sold by Drazin, the trustee of SF NU to SF 4910 Georgia Ave NW LLC, whose mailing address is in the care of "Washington Capital Partners" and the same address as the WCP Entities.

91.    As provided by Paragraph L of the Substitute Trustee's Deed, SF 4910 Georgia Ave NW LLC "is an affiliate and/or wholly owned subsidiary of SF NU designated by SF NU to take title to the Property." Exh K, at 3 ¶ L.

92.    On October 6, 2022, SF 4910 Georgia Ave NW LLC recorded a Deed dated September 30, 2022, in which it transferred its interest in the Property to Defendant WCP 4910 Georgia Ave for **$9,008,460.72**, *i.e.*, the balance of the $10.86M loan. *See* Exh. L.

93.    WCP 4910 Georgia Ave is an entity that is controlled by Huertas and is among the associated WCP Entities.

94.     As a result of all these post-foreclosure conveyances, the WCP Entities effectively transferred the Property from themselves to themselves, while canceling Dr. Kim's ownership – despite the fact that the foreclosure only dealt with "commercial" aspects of the Property.

95.     Since the foreclosure, Plaintiffs, by counsel, have contacted the WCP Entities to confirm they still own the three Condo Units purchased on July 31, 2020. *See* Exh. P (showing a letter dated November 29, 2022, from Counsel).

96.     In response, the WCP entities assert that Plaintiffs' interest in the Condo Units has been wiped out by the 2022 Foreclosure. *See* Exh. Q, dated December 2, 2022, from WCP Entities in response to Plaintiffs' letter.

97.     Plaintiffs were not informed of these post-Sale Agreement conveyances or the lack of recording of Plaintiffs' interest until after all these events had occurred.

## District Title and Its Release of Funds from Escrow

98.     District Title was involved in the original purchase of the Property. It also was the land title company retained to handle Dr. Kim's purchase of the Condo Units and, as such, had a fiduciary duty owed to him.

99.     District Title failed to do ***any*** diligence in its work in regard to Dr. Kim's purchase of Condo Units at the Property.

100.    Per the parties' agreement, District Title was to be title company for Plaintiffs in their purchase of the Condo Units and the sellers were to have a separate title company.

101.    On July 27, 2020, Paret informed District Title that Plaintiffs would be wiring funds for the sale of the Condo Units, and asked District Title to explain the process. *See* Exh. M.

102.    Yet District Title never communicated directly with Plaintiffs—in any respect— even while handling their funds.

103.    At that time, Paret informed District Title that escrow was to be held in Plaintiffs' name and not released until all parties at the Closing consented.

104.    On July 27, 2020, in another communication, Paret informed District Title that there needed to be express conditions for the release of funds, such as the written authorization from Dr. Kim to release his funds. *See* Exh. N.

105.    On July 30, 2020, District Title (again) was specifically instructed that the funds placed by Plaintiffs into escrow were not to be released until (i) all parties had signed off on the contracts, and (ii) Dr. Kim approved the release of funds. *See* Exh. O.

106.    On July 30, 2020, Dr. Kim placed $600,000 of funds into escrow with District Title for Plaintiffs' purchase of the Condo Units.

107.    When Plaintiffs provided the funding to District Title, the payments were noted as "ESCROW ACCOUNT FOR HOUSE."

108.    District Title was in possession of the executed Sale Agreement and was required to comply with its terms.

109.    Yet District Title released the entirety of the $600,000 that Plaintiffs had put in escrow, without seeking or receiving Plaintiffs' permission.

110.    District Title had no right to release Plaintiffs' funds without Dr. Kim's permission.

111.    Despite being the title company, District Title never performed a title search of abstract, mortgagee's policy, or owner's policy for Plaintiffs.

112.    District Title took no action to verify that the Property's title was clear on the day of the Closing.

113.    District Title took no action to record Plaintiffs' interest in the Condo Units.

114.    District Title permitted itself to be paid for this service to Plaintiffs that it never performed for the title search, recording, taxes, *inter alia*.

115.    Despite failing to record Plaintiffs' interest, District Title documented payments to itself and to Plaintiffs' broker in the HUD-1. *See* Exh. G.

116.    District Title had knowledge of the various parties' involvement with the Property and facilitated the other Defendants' scheme for its own benefit.

## **CAUSES OF ACTION**

### **COUNT I – Conversion**
((Defendants Paret, 4910 Georgia Ave Holdings, Coloma River))

117.    All paragraphs contained are incorporated by reference herein.

118.    Plaintiffs obtained the right to ownership of the Condo Units through the Sale Agreement and their subsequent payment.

119.    As identified herein, each of the Defendants interfered with Plaintiffs' right to the Condo Units. First Paret, and the Developer failed to record the property interest. Then, the Defendants caused the Property to be foreclosed upon without notice to Plaintiffs.

120.    In each case, the Defendants further succeeded in converting those funds paid by the Plaintiffs for purposes of the Closing, i.e. securing ownership of the Condo Units, without any authority from the Plaintiffs.

121.    As a result, Plaintiffs have lost control of the funds they paid for the sale of the Condo Units and been damaged by the conversion for the value of those funds.

**WHEREFORE** Plaintiffs pray that this Honorable Court finds each of the Defendants jointly and severally liable to Plaintiffs for this conversion for the value of the funds wrongfully converted $600,000, plus interest and any incidental damages, including attorney fees, punitive damages, and such further relief as justice requires.

## COUNT II – Fraud & Fraud in the Inducement,

Defendants 4910 Georgia Ave Holdings4910 GEORGIA AVE HOLDINGS LLC, Paret, Coloma River)

122.    All paragraphs contained are incorporated by reference herein.

123.    The Developers, either directly or through their agents, made numerous false representations to Plaintiffs regarding the title of the Condo Units, the presence of any liens thereon, and how they would record Plaintiffs' interest in the Condo Units, *inter alia*.

124.    Each of these, as well as the representations discussed *supra*, represented material facts that were known by Developers to be false.

125.    Developers made these false representations to Plaintiffs with the intent of deceiving Plaintiffs into  purportedly purchasing the Condo Units and thereby placing their funds ($600,000) at substantial risk of loss.

126.    Defendants sold the Condo Units to Plaintiff despite there not being a necessary condominium instrument to convey such property.

127.    From the start, Defendants planned to use the funds provided by Plaintiffs, not for the purchase of condominiums as represented to Plaintiffs, but to close on the deal between the Developers and the WCP Entities.

128.    Plaintiffs reasonably relied on these misrepresentations to their detriment.

129.    Plaintiffs have now been damaged in the amount of the loss of the value paid for the Condo Units, plus incidental damages, and attorney fees.

**WHEREFORE** Plaintiffs pray that this Honorable Court finds Defendants jointly and severally liable to Plaintiffs:

a.  For fraud and fraud in the inducement, and the conspiracy thereof, for the value of the Condo Units, incidental damages, and punitive damages, all in an amount of no less than $600,000.00; or,

b.  all attorney's fees incurred in bringing this action and remedying the Defendants' fraud; and

c.  such further relief as justice requires.

### COUNT III – Breach of Fiduciary Duties
(Defendant District Title)

130.    All paragraphs contained are incorporated by reference herein.

131.    Dr. Kim placed $600,000 of funds into escrow with District Title on July 30, 2020, for Plaintiffs' purchase of the Condo Units.

132.    District Title accepted these funds as trustee on behalf of Plaintiffs.

133.    District Title had fiduciary duties owed to the trust and Plaintiffs as beneficiaries of the trust including, administering the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust; administering the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries; providing the duty of loyalty required by D.C. Code § 19–1308.02; providing the prudent administration of the trust as required by D.C. Code § 19–1308.04; and taking reasonable steps to take control of and protect the trust property as required by D.C. Code § 19–1308.09.

134.    District Title breached these fiduciary duties by accepting the funds knowing that it was unable to fulfill its duties, engaging in self-dealing when it paid itself from these funds, losing the entirety of the funds by making a distribution of such without Plaintiffs' consent, failing to prudently invest or manage the funds, and being loyal only to third-parties in this transaction with whom District Title had prior relations.

135.    Plaintiffs have been damaged by District Title's breach of its fiduciary duties in the amount of the trust property, which is $600,000, plus interest at the judgment rate.

**WHEREFORE** Plaintiffs pray that this Honorable Court finds District Title liable to Plaintiffs for $600,000, plus interest and incidental damages, for its breach of fiduciary duties, and such further relief as justice requires.

### COUNT IV – Unjust Enrichment
(the WCP Entities)

136.    All paragraphs contained are incorporated by reference herein.

137.    Plaintiffs conferred a benefit to the WCP Entities by paying $600,000 for the purchase of the Condo Units, which money was subsequently paid over to the WCP Entities.

138.    Upon information and belief, the WCP Entities had knowledge of Plaintiffs and knowingly retained that benefit provided by Plaintiffs by receiving the funds for that financing, *i.e.*, the two loans, represented by the August 5, 2020 HUD-1 for which they were fully compensated as a result of the 2022 foreclosure action.

139.    Plaintiffs are now out their $600,000 and never received the Condo Units.

140.     It is inequitable for the WCP Entities to retain the $600,000 as they have received the benefit of the money without providing anything in return to Plaintiffs i.e. the Condo Units.

141.    The WCP Entities have been unjustly enriched by receiving $600,000 from Plaintiffs and providing Plaintiffs with no Condo Units. Therefore, Plaintiffs have been damaged in the amount of the value of the Condo Units, which is no less than $600,000 plus interest.

**WHEREFORE** Plaintiffs pray that this Honorable Court enter judgment in their favor and against all of the WCP Entity Defendants, award Plaintiffs $600,000 in compensatory damages, plus interest, and all attorney's fees incurred in bringing this action.

### COUNT VII – Violation of DC Consumer Protection Act, D.C. Code §28-3901 et. seq.
((Defendants 4910 Georgia Ave Holdings, Paret, Coloma River, District Title)

142.    All paragraphs contained are incorporated by reference herein.

143.    D.C. Code §28-3905(k)(1)(A) allows a consumer to bring an action seeking relief from the use of a trade practice in violation of D.C. Law.

144.    Under D.C. Code §28-3904, a unlawful trade practice can include:

"(e) misrepresent as to a material fact which has a tendency to mislead;

(e-1) represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(f) fail to state a material fact if such failure tends to mislead;

(q) fail to supply to a consumer a copy of a sales or service contract, lease, promissory note, trust agreement, or other evidence of indebtedness which the consumer may execute;

(r) make or enforce unconscionable terms or provisions of sales or leases;

(r)(2) knowledge by the person at the time of the sale or lease of the inability of the consumer to receive substantial benefits from the property or services sold or leased."

145.    The Plaintiffs as purchasers of the Condo Units in DC are "consumers" under the definition put forth in D.C. Code §28-3901(2) and therefore have standing to bring this action.

146.    Defendants  4910 Georgia Ave Holdings, Paret, Coloma River, and District Title are "merchants" under the definitions set forth D.C. Code §28-3901(3) whose actions are governed by the  Consumer Protection Act, D.C. Code §28-3901 et. seq..

147.    he actions of the Defendants in selling the Condo Units to the Plaintiffs, without recording the title, effectuating fraudulently backdated documents and a foreclosure sale, and seizing Plaintiffs funds without ever intending to provide property or services in return are all

prohibited trade practices under the DC Consumer Protection Act, specifically under D.C. Code § 28-3904.

148.    In selling or effectuating the sale of the Condo Units to the Plaintiffs, the Defendants violated the DC Consumer Protection Act, D.C. Code § 28-3901 *et seq*., in engaging in prohibited trade practices, namely those identified in D.C. Code § 28-3904(e)-(e-1) and (q)-r(2).

149.    As a result of the use of prohibited trade practices by the Defendants, the Plaintiffs paid $545,000 for three Condo Units that the Defendants never intended to convey.

150.    These violations of the Consumer Protection Act, D.C. Code §28-3901 et. seq. by the Defendants have damaged the Plaintiffs in the amount of $600,000.

151.    The Defendants have used these deceptive practices to damage other consumers, namely through the false sale of Condo Units and backdating of subsequent titles.

152.    This violation of the Consumer Protection Act, D.C. Code §28-3901 et. seq. is part of a continuing trend by these Defendants, necessitating their enjoinment from participating in any further land sale deals in the District of Columbia.

**WHEREFORE** Plaintiffs pray that this Honorable Court enter judgment in their favor and against all of the WCP Entity Defendants, award Plaintiffs $600,000 in compensatory damages, trebled to $1.8 million plus pre and post judgment  interest, an injunction barring the Defendants from engaging in the sale of real property in the District of Columbia and awarding Plaintiffs all attorney's fees incurred in bringing this action.

### COUNT VI – Negligence
(Defendant District Title)

153.    All paragraphs contained are incorporated by reference herein.

154.    Plaintiffs obtained the right to ownership of the Condo Units through the Sale Agreement and their related payment.

155.    As identified herein, each of the Defendants interfered with Plaintiffs' right to the Condo Units. First, the Developers failed to record the property interest. Then, the Defendants caused the Property to be foreclosed upon without notice to Plaintiffs.

156.    In each case, the Defendants further succeeded in using those funds paid by the Plaintiffs for purposes of the Closing, *i.e.*, securing ownership of the Condo Units, without any authority from the Plaintiffs.

157.    In regard to Defendant District Title, it was entrusted with Plaintiffs' funds for the purchase of the Condo Units and was told by Plaintiffs to not release the funds until requested to do so by Plaintiff Kim.

158.    District Title never sought further information from Plaintiffs or tried to return the funds he provided to it.

159.    By accepting the funds from Plaintiffs after being informed by Kim that only he could give permission to release such funds or that they had to be returned to him, District Title had a duty to hold such funds on Plaintiffs' behalf, keep Plaintiffs informed, and to perform the duties reasonably expected from a title company or similar professional, *i.e.*, perform a title search, attend closing, and ensure a recording exists in the property records.

160.    District Title breached these duties by not performing any due diligence in terms of protecting Plaintiffs' interests in the funds or the Property—*i.e.*, not performing a title search, not determining whether the Condo Units had marketable title, not providing Kim information as to the status of the transaction, not attending closing, and not taking any action to record or attempt to record Plaintiffs' interest, *inter alia*.

161.    Further, District Title released Plaintiffs' funds knowing that the funds were not to be released without Kim's permission or were to be returned to Kim on August 3, 2020, if Kim's permission was never received by District Title.

162.    District Title never obtained Kim's permission to release the funds.

163.    Nevertheless, Plaintiffs' funds were transferred out from the escrow account held by District Title for Plaintiffs, in whole, without Kim's permission.

164.    As a result, Plaintiffs have lost control of the funds they paid for the sale of the Condo Units and have been damaged by the loss of the value of those funds and/or the loss of the value of the Condo Units.

**WHEREFORE** Plaintiffs pray that this Honorable Court finds each of the Defendant District Title liable to Plaintiffs for this negligent use and loss of Plaintiffs funds in the amount of $600,000, plus interest and any incidental damages, including attorney fees, punitive damages, and such further relief as justice requires.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiffs demand a trial by jury as to all claims asserted in the Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

Plaintiffs Kim Georgia Ave

and Dr. Kim,

By counsel,

By: _____
*/s/ Federico J. Zablah-Siman*

J. Chapman Petersen, Esq., Bar ID# 0448740
Federico J. Zablah-Siman, Bar ID# VA166
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2512 – Telephone
(571) 459-2307 – Facsimile
jcp@petersenfirm.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this Wednesday, September 15, 2023, the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

_____
/s/
Federico J. Zablah-Siman, Esq.