IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. EUNG KWON KIM, *et al.* ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | Case No. 1:23-cv-1101-TJK |
| ) | |
| v. ) | |
| ) | |
| DP CAPITAL LLC, *et al*. ) | |
| ) | |
|     Defendants. ) | |

**MOTION TO DISMISS AMENDED COMPLAINT AND
INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP") and WCP 4910 Georgia Ave NW LLC ("WCP 4910") (collectively, the "WCP Parties" and each individually a "WCP Party"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), and move this Honorable Court to dismiss the amended complaint (the "Complaint," as found at DE #36) of Dr. Eung Kwon Kim ("Dr. Kim") and Kim Georgia Ave, LLC ("KGAL") (Dr. Kim and KGAL being collectively known as the "Plaintiffs," and each individually known as a "Plaintiff"), and in support thereof states as follows:[1]

**I.      Introduction**

Dr. Kim and KGAL claim to have purchased real property in the District of Columbia without receiving a deed, without using the services of a title company, without procuring title

---

[1] Large swaths of this brief bear marked resemblance to a brief filed in the matter of *Shah, et al. v. DP Capital, LLC, et al.*, Case No. 1:23-cv-1102 (D.D.C. 2023), as found at DE #37 therein. Such resemblance is not coincidental; the two cases contain notable similarities and contain overlapping factual and legal issues. The underlying complaints, however, are not identical, with certain allegations and exhibits differing. Accordingly, while this may greatly resemble the brief filed in the *Shah* matter, the two filings are not facsimiles and do have some material differences.

1

insurance, and without subsequently checking to verify their ownership interest has been recorded amongst the land records. In so doing, they bring suit not merely against the persons and the entity that allegedly swindled them out of money (with such persons and entity being perfectly logical targets for such an action) but, too, against that swindling entity's lender, which subsequently foreclosed on the real property pursuant to the terms of a deed of trust. And in so doing, the Plaintiffs go at least one step too far.

Indeed, real estate cons are seemingly as old as society itself, forming an all-too-familiar part of the prevailing lexicon (the Brooklyn Bridge is reputed to have been subject to many a quitclaim deed). But what the Plaintiffs endeavor *sub judice* is not merely to seek recourse against the parties alleged to have carried out such a con but, too, to seek recourse against a private lender that loaned more than $11.8 million and secured that loan with a validly-recorded deed of trust on a borrower's real estate.

In an effort to justify this extension of liability to unrelated third parties, the Plaintiffs make myriad allegations. Troublingly, however, many of these allegations are undermined by the very documents appended to the Complaint itself. A supposed "de facto partnership" is revealed to be little more than an e-mail addressing unrelated development projects; the scandalous "backdating" of critical documents is shown to have never actually happened; a recitation of numbers on a settlement statement is found to be deceptive; and a deed of trust peculiarly limited to the "commercial aspects" of real property is shown to not, in fact, have any such limitations.

To be sure, this case is an exemplar of oddity, and not a positive one at that. The incongruity between the Complaint's allegations and the contents of its exhibits only serves to highlight the equal incongruity between the same allegations and the causes of actions that ensue. In a case that may be most simply described as one where a party contracted to convey property and then failed

to do so, there is no claim for breach of contract. Rather, there is only a tort claim against the WCP Parties, and an inapplicable claim at that.

For these reasons, and as extrapolated upon *infra*, the Complaint merits dismissal with prejudice as to the WCP Parties. The claim for unjust enrichment is not properly pleaded as to the WCP Parties, for the rather good reason that no cause of action can be forced to fit the alleged actions, *vel non*, of the WCP Parties. And there is accordingly no claim for relief to be maintained *sub judice*.

## II.   Rule 12(b)(6) Standard

As recently observed by this Honorable Court, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D.D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002)).

Further, while assessment of a motion to dismiss is generally confined to the four corners of an underlying pleading, "the court may consider documents extrinsic to the complaint if they are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009); *Branin v. TMC Enterprises, LLC*, 832 F. Supp. 2d 646, 649 (W.D. Va. 2011); *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 2010 WL 2732334, at *2 n. 2 (D. Md. 2010)).

### III.    Factual Allegations

Accepting the Plaintiffs' textual allegations as true, the gravamen of the Complaint is that KGAL contracted to purchase three condominium units (the "Condo Units") located at 4910 Georgia Avenue, NW, Washington, DC 20011 (the "Property"), did not receive or record a deed thereto, and later saw the Property foreclosed by WCP on behalf of a third party. KGAL and its owner, Dr. Kim, allege most pertinently:

Accepting the Plaintiffs' textual allegations as true, the gravamen of the Complaint is that SIGL contracted to purchase three condominium units (the "Condo Units") located at 4910 Georgia Avenue, NW, Washington, DC 20011 (the "Property"), did not receive or record a deed thereto, and later saw the Property foreclosed by WCP on behalf of a third party. SIGL and its owner, Dr. Kim, allege most pertinently:

4

1. On September 20, 2019, Daniel Huertas ("Mr. Huertas") and Charles Paret ("Mr. Paret") formed "a *de facto* partnership … to develop the Property as a condominium project for residential use." Complaint, DE #36, at ¶ 26.

2. In July 2020, Dr. Kim was introduced to Mr. Paret "and his associated entities,"[2] who offered to sell Dr. Kim three as-yet-undeveloped Condo Units. *Id.* at ¶¶ 35, 37-41.[3]

3. Mr. Paret made various false representations to Dr. Kim in connection with the putative sale of the Condo Units. *Id.* at ¶¶ 41, 43-44.

4. Kim Georgia Ave, LLC ("KGAL") then entered into a "New Construction Pre-Sales Agreement" with 4910 Georgia Ave Holdings LLC ("4910 GAHL") – an entity that is not amongst the WCP Parties – providing for the sale of "3 units" in exchange for $600,000.00. *Id.* at Exhibit D.

5. The Plaintiffs paid the $600,000.00 to 4910 GAHL. *Id.* at ¶ 56.

6. Following execution of the New Construction Pre-Sales Agreement, "Paret informed Dr. Kim that he was heading directly to the Office of the Recorder of Deeds for the District of Columbia to record Plaintiffs' ownership." *Id.* at ¶ 61.

7. Mr. Paret never made any such recording. *Id.* at ¶ 62.

---

[2] Mr. Paret "and his associated entities" are collectively defined as "Developers" in paragraph 21 of the Complaint. A good faith reading of this paragraph, as well as the definition of the "WCP Entities" set forth in paragraph 6, suggests the WCP Parties are *not* included in the definition of "Developers."

[3] Mr. Paret is presently a debtor in bankruptcy. *See In re Paret*, Case No. 23-217-ELG (Bankr. D.D.C. 2023). None of the relief sought in this motion is calculated to collect any debt, or advance the collection of any debt, as against Mr. Paret, and this is a purely defensive motion as it relates to the Plaintiffs (who are not debtors in bankruptcy). It would appear, however, that this case is likely stayed, as a matter of law, as against Mr. Paret. 11 U.S.C. § 362.

8. In "early August 2020" – after the New Construction Pre-Sales Agreement was executed – two commercial deeds of trust, in favor of WCP, came to encumber the Property, pursuant to slightly over $11.6 million in loans. *Id.* at ¶¶ 70-72.

9. The Plaintiffs allege these deeds of trust were "deliberately backdated in order to be prior in time to the Plaintiffs' Sale Agreement," *Id.* at ¶ 73, but the deeds of trust show execution dates *after* the alleged sales agreement, *Id.* at Exhibits E, F (signature pages).[4]

10. 4910 GAHL paid a "closing cost" on the two loans from WCP, in the amount of $1.253 million. Complaint, DE #36, at ¶ 76.

11. WCP subsequently assigned one of its promissory notes to SF NU, LLC ("SNL"). *Id.* at ¶ 80.

12. The Plaintiffs allege the assignment to SNL to have been "backdated," but make no allegations supporting this contention aside from an eight word sentence. *Id.* at ¶ 81, *passim*.

13. On May 24, 2022, WCP foreclosed upon the Property. *Id.* at ¶ 87.

**IV. Argument: The Complaint Merits Dismissal – as to the WCP Parties – with Prejudice**

The sole claim directed toward the WCP Parties is Count IV of the Complaint, which is for unjust enrichment. The core of this claim is a theory that (i) the Plaintiffs paid $600,000.00 to 4910 GAHL; (ii) 4910 GAHL used that money to pay loan fees to WCP; (iii) WCP subsequently foreclosed the collateral supporting the loans; and (iv) it is accordingly inequitable for WCP to retain the monies it collected from 4910 GAHL as and for loan fees. There are two problems with

---

[4] Where the language of a pleading differs from the exhibits appended thereto, the contradicted allegations are not entitled to the presumption of truthfulness in the prism of a motion to dismiss. *See, e.g.*, *Doe #1 v. Am. Fed'n of Gov't Employees*, 554 F. Supp. 3d 75, 92 (D.D.C. 2021) ("The court may also disregard 'the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.'") (quoting *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (citing *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002))).

this cause of action, however: (a) the facts pleaded in the Complaint do not support the elemental requirements of such a claim, and (b) recovery is precluded by the economic loss doctrine.

### a. Count IV Does Not State a Claim for Relief

Under District of Columbia law, a claim for unjust enrichment has three elements: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (quoting *News World Communications, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)).

Here, the Complaint does not allege the Plaintiffs to have conferred a benefit on the WCP Parties. To the contrary, the Complaint alleges KGAL (and Dr. Kim, derivatively, for the benefit of KGAL) to have conferred a benefit upon 4910 GAHL. The Plaintiffs did not pay any monies to the WCP Parties; they paid monies to 4910 GAHL. So the first element of the cause of action is absent, as applied to the WCP Parties.

The Complaint also fails to allege, in non-threadbare language, that WCP retained the at-issue benefit. While the Plaintiffs assert, in this cause of action, that "Plaintiffs conferred a benefit to the WCP Entities by paying $600,000 for the purchase of the Condo Units, which money was subsequently paid over to the WCP Entities," Complaint, DE #36, at ¶ 137, the other allegations of the pleading – and the exhibits thereto – belie this contention.

Initially, the Complaint initially characterizes a "closing cost" being paid "in the amount of $1.253 million…" *Id.* at ¶ 76. In so doing, the Complaint references a HUD-1 statement that is appended thereto. *Id.* at ¶ 74.

The HUD-1 (or "Settlement Statement," as the document is now known) does not actually show a "closing cost." To the contrary, the ledger reveals (i) 4910 GAHL borrowed

$10,861,300.00 from WCP (Complaint, DE #36, at Exhibit G, p. 1, ln. 202); (ii) used a portion of those monies to pay off a first mortgage, held by Mid Atlantic IRA, LLC FBO Susa, in the sum of $1,041,000.00 (*Id.* at p. 1, ln. 104); (iii) used a portion of those monies to pay off a loan due and owing to Capital Bank, N.A., in the sum of $2,374,336.10 (*Id.* at p. 1, ln. 105); (iv) incurred various charges and expenses – including payment of property taxes, retirement of a water/sewer lien, payment of hazard insurance, and prepayment of loan interest – incidental to the loan closing (*Id.* at p. 2, ll. 903-1306); and (v) was required to bring $1,255,032.19 to closing (*Id.* at p. 1, ln. 303).

In light of the fungible nature of money, the funds brought to closing by 4910 GAHL can be viewed as having gone to the retirement of pre-existing debt, or the payment of taxes and sewer liens, just as much as they can be viewed as having been used to prepay interest on the WCP loan or to cover WCP's loan origination fee. Indeed, it is more sensible to construe the monies loaned by WCP as being used to cover the prepayment of interest or the payment of the loan origination fee; but for WCP loaning these monies, those charges would not have been incurred. And the monies due and paid to third parties at closing well exceed the $1.255 million the Settlement Statement shows being paid over by 4910 GAHL, with the retirement of existing debt alone topping $3.4 million.

Yet even if, *arguendo*, the Plaintiffs showed that their funds were separately held by 4910 GAHL, them paid over to WCP and retained by WCP, the pleading would still come up short of making a colorable allegation that WCP's retention of such funds is unjust under the circumstances. To the contrary, it is clear that WCP loaned over $11.6 million – with one of two loans, in the amount of $10,861,300.00, being evidenced on the Settlement Statement. The monies paid to the WCP Parties at closing are (i) a "Loan Origination Fee" of $271,532.50 (exactly 2.5%

8

of the sum being loaned); (ii) a "Loan Processing Fee" of $1,000.00; and (iii) "Pre-Paid Interest" of $715,000.00. *Id.* at p. 2, ll. 801, 806, 904.

The Complaint does not specify why any of these three payments is unjust in the context of a $10.8 million loan. And, to the contrary, a 2.5% origination fee and a $1,000.00 processing fee seem eminently reasonable in the prism of a large commercial loan. Meanwhile, the prepaid interest accrued to the benefit of 4910 GAHL – the borrower – by satisfying the entity's obligations under the correlative promissory note.

In short, the Plaintiffs do not plead facts giving rise to any of the three elements of a claim for unjust enrichment. And the cause of action is accordingly meritorious of dismissal.

### b. The Economic Loss Rule Bars Recovery

Even if, *arguendo*, the Complaint satisfied the pleading rigors of a claim for unjust enrichment, such a cause of action would still necessarily fail. The District of Columbia recognizes the economic loss rule which, in turn, prohibits the recovery of monies from third parties for solely pecuniary harm. The claim for unjust enrichment is a textbook exemplar of the variety of litigation forbade under this rule.

As noted by the District of Columbia Court of Appeals, " '[g]enerally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort.' " *Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 982 (D.C. 2014) (quoting *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995)). Specifically, "as a matter of longstanding policy in courts around the country, '[w]here pure economic loss is at issue[,] not connected with any injury to one's body or property, ... the reach of legal liability is quite limited.'" *Aguilar*, 98 A. 3d at 983 (quoting *In re Exxon Valdez*, 1994 WL

182856, at *8 (D. Alaska 1994) aff'd, 104 F.3d 1196 (9th Cir. 1997); citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927)).

This rationale has been tidily expounded upon by the United States District Court for the District of Columbia:

> Under the economic loss rule, "a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort." The D.C. Court of Appeals adopted the economic loss doctrine in Aguilar, observing that it has been a "longstanding policy in courts around the country" that where "pure economic loss is at issue, not connected with any injury to one's body or property, the reach of legal liability is quite limited."

*William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 19 (D. D.C. 2018) (quoting *Aguilar v. RP MRP Wash. Harbour, LLC*, 98 A.3d 979, 982-983 (D.C. 2014) (quoting *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995))).

As observed by the *Arguilar* Court, this doctrine is not unique to the District of Columbia; in fact, it is the same rule relied upon by a majority of states. *Jefferson v. Collins*, 210 F. Supp. 3d 75, 85 (D. D.C. 2016) ("In *Aguilar*, the District of Columbia Court of Appeal joined a majority of states that have adopted the economic loss rule"). And the economic loss rule has long been held to apply to cases centered upon the ownership of real estate. *See, e.g.*, *Singer v. Bulk Petroleum Corp.*, 9 F. Supp. 2d 916, 921 (N.D. Ill. 1998) ("The economic loss doctrine applies to cases which are predicated on real estate transactions.") (citing *NBD Bank v. Krueger Ringier, Inc.*, 686 N.E.2d 704, 708 (Ill. App. 1997)); *Metal Processing Co., Inc. v. Amoco Oil Co.*, 1996 WL 288279 (E.D. Wis. 1996) (applying the economic loss doctrine to "a real estate transaction involving allegedly contaminated property"); *Reighard v. Yates*, 285 P. 3d 1168, 1174 (Utah 2012) ("The economic loss rule prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute. Thus, we hold that under the economic loss rule the Reighards may not recover economic damages to their house but may recover damages due to

bodily injury."); *Palco Linings, Inc. v. Pavex, Inc.*, 1990 WL 260746 (M.D. Pa. 1990) ("We have previously shown that the economic loss rule extends to real estate and construction projects").

Here, the Plaintiff's claim for unjust enrichment is one that manifestly sounds in tort – not contract. *See, e.g., JSC Transmashholding v. Miller*, 70 F. Supp. 3d 516, 525 (D.D.C. 2014) (noting unjust enrichment to be a tort); *Taylor v. Fed. Aviation Admin.*, 351 F. Supp. 3d 97, 99 (D.D.C. 2018) (discussing "the common law tort of unjust enrichment"). And the claim, being lodged against the WCP Parties – parties with whom the Plaintiffs are not in any direct form of privity – accordingly runs afoul of the economic loss rule.

### c. Dismissal Should be With Prejudice

Finally, inasmuch as the claim against the WCP Parties fails as a matter of law, and inasmuch as the Plaintiffs have already been afforded leave to amend their pleading once, dismissal of the Complaint should be with prejudice. The Plaintiffs cannot change that they never paid a dollar to the WCP Parties, nor can they sue the WCP Parties for unjust enrichment without running afoul of the economic loss rule. There is no amendment capable of curing these core issues.

As noted by the United States Court of Appeals for the District of Columbia Circuit, "a district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006)). *See also*, *Jefferies v. Dist. of Columbia*, 916 F. Supp. 2d 42, 44 (D. D.C. 2013) ("The court may dismiss a claim with prejudice when amending the complaint would be futile.") (citing *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *Carty v. Author Solutions, Inc.*, 789 F.Supp.2d 131 (D.D.C. 2011)).

Here, the lone cause of action against the WCP Parties suffers from deficiencies that are not solely correlative to a failure to conform to the pleading rigors of Federal Rule of Civil Procedure 8, Federal Rule of Civil Procedure 9, *Iqbal*, or *Twombly*. This is not a matter of the Plaintiffs simply failing to include sufficient factual allegations or errantly ignoring an elemental prong of a given cause of action. To the contrary, the flaws underlying the Complaint are uncurable in nature. And dismissal with prejudice is thusly justified.

## V.     Conclusion

WHEREFORE, the WCP Parties respectfully pray this Honorable Court (i) dismiss the Complaint with prejudice, as against the WCP Parties; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: September 20, 2023

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for DP Capital LLC, WCP Fund I LLC, and WCP 4910 Georgia Ave NW LLC*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of September, 2023, a copy of the foregoing was served via this Honorable Court's CM/ECF system, upon:

Federico Jose Zablah-Siman, Esq.
CHAP PETERSEN AND ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, VA 22030
Email: fjz@petersenfirm.com
*Counsel for the Plaintiffs*

J. Chapman Petersen, Esq.
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, VA 22030
Email: jcp@petersenfirm.com
*Counsel for the Plaintiffs*

/s/ Maurice B. VerStandig
Maurice B. VerStandig