# IN UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KIM GEORGIA AVE LLC, *et al.* ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | No. 1:23-cv-1101 |
| ) | |
| DP CAPITAL LLC, *et al.* ) | |
| ) | |
| *Defendants*. ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO WCP PARTIES' SUGGESTION OF BANKRUPTCY AND IMPOSITION OF AUTOMATIC STAY

J. Chapman Petersen, Esq., Bar ID# 0448740
Federico J. Zablah-Siman, Bar ID#VA166
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2512 – Telephone
(571) 459-2307 – Facsimile
jcp@petersenfirm.com
*Counsel for Plaintiffs*

1

COMES NOW Plaintiffs KIM GEORGIA AVE, LLC ("KGAL") AND DR. EUNG WONG KIM ("Kim") (collectively, "Plaintiffs"), by counsel, and hereby states as follows for its response in opposition to the Suggestion Of Bankruptcy And Imposition Of Automatic Stay (the "Suggestion") filed by DP CAPITAL LLC ("DPCL"), WCP FUND I LLC ("WCP"), and WCP 4910 GEORGIA AVE NW LLC ("WCP 4910") (collectively, the "WCP Parties" and each individually a "WCP Party").

## FACTUAL BACKGROUND

In 2019, Charles Paret and Daniel Huertas, through their entities, developed properties in Washington, D.C., including a proposed condominium project at 4910 Georgia Avenue, NW (the "Property"). *See* Amended Complaint ("Am. Compl.") ¶¶ 17, 26. The project was managed by 4910 Georgia Ave Holdings, LLC ("Developer"), which became the titleholder. ¶¶ 22, 24. To fund construction, a de facto partnership was established between Paret (through Coloma River Holdings) and Huertas (through the WCP Entities, including WCP Fund I, LLC), wherein profits and responsibilities were shared. ¶¶ 26-29. The operating agreement of the Developer specified its business as the sale of condominium units. ¶ 30.

In July 2020, Dr. Eung Kwon Kim was introduced to Paret, who offered him an "opportunity" to purchase three condominium units ("Condo Units") at half price for a total of $600,000. The offer was contingent on a 48-hour deadline. ¶¶ 39-41. Relying on representations that the units were free of liens and would be recorded in Dr. Kim's name, Dr. Kim secured the purchase funds through personal lines of credit and wired the amount to District Title, the designated title company. ¶¶ 42, 47.

2

On July 31, 2020, during the closing, Paret, acting on behalf of the Developer, confirmed receipt of the funds and provided a New Construction Pre-Sales Agreement ("Sales Agreement"), which obligated the Developer to transfer ownership of the Condo Units to Dr. Kim by general warranty deed. ¶¶ 48-50. Paret also assured Dr. Kim he would record the transfer immediately with the D.C. Office of the Recorder of Deeds. Despite these assurances, neither Paret nor anyone else recorded Dr. Kim's interest in the Condo Units. ¶¶ 61-62.

Unbeknownst to Dr. Kim, the $600,000 he paid was instead utilized by the Developer and the WCP Entities as part of a scheme to finance a larger loan. ¶ 68. On August 5, 2020, Huertas (on behalf of WCP Fund I) and Paret executed documents securing an $852,000 commercial loan and a $10.86 million loan for the Property. The loan closing, reflected in a HUD-1 statement, misleadingly included Dr. Kim's purchase funds as part of the WCP refinancing. ¶¶ 74-77. Notably, the loan documents were deliberately backdated to July 31, 2020, to predate Dr. Kim's Sales Agreement and thereby subordinate his interest. ¶¶ 72-73.

Subsequently, in 2022, the WCP Entities orchestrated a foreclosure on the Property without notice to Dr. Kim. ¶¶ 86-87. The foreclosure, initiated by the WCP Entities through SF NU, LLC, was based on alleged defaults under the WCP commercial loans. ¶ 85. On May 24, 2022, the foreclosure sale resulted in a WCP-affiliated entity reacquiring the Property at a significant discount. ¶ 88. Through a series of post-foreclosure conveyances, the WCP Entities transferred the Property among their affiliates while extinguishing Dr. Kim's ownership of the Condo Units. ¶¶ 89-94.

Despite repeated efforts, Dr. Kim only discovered the failure to record his interest after the foreclosure occurred. ¶¶ 63, 97. The WCP Entities now assert that the foreclosure wiped out Dr. Kim's interest. ¶ 96. To date, Dr. Kim has neither received title to the Condo Units nor a return of

his funds. District Title, despite acting as escrow agent and having fiduciary duties, released Dr. Kim's funds without authorization and failed to record his interest, conduct a proper title search, or provide any protections required in a real estate transaction. ¶¶ 109-114.

In August 2023, WCP initiated an involuntary Chapter 7 bankruptcy proceeding against Paret, titled In re Paret, Case No. 23-217-ELG (Bankr. D.D.C. 2023). Plaintiffs were notified of this proceeding on October 2, 2023. (ECF No. 40). Despite initiating the bankruptcy over a year ago, WCP did not raise any suggestion of an automatic stay or attempt to enforce it in this matter until after their motion to dismiss was denied by this Court in December 2024 and discovery obligations became due[1]. The timing of WCP's invocation of the automatic stay demonstrates a tactical maneuver designed to delay litigation and avoid adverse rulings. ¶¶ 96-97.

## **LEGAL STANDARD**

Under 11 U.S.C. § 362(a), the automatic stay applies only to actions against the debtor or property of the bankruptcy estate. Specifically, the stay prohibits the "commencement or continuation" of judicial proceedings "against the debtor" that could have been initiated before the bankruptcy filing, as well as any act to obtain possession or exercise control over property of the estate. This provision safeguards the debtor's estate from dismemberment and ensures fairness among creditors by preventing individual creditors from pursuing their interests at the expense of others. *See City of Chi. v. Fulton*, 592 U.S. 154, 141 S. Ct. 585 (2021).

However, as recognized in *In re Midway Airlines Corp.*, 283 B.R. 846, 851 (E.D.N.C. 2002) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)), the automatic stay provision generally applies only to the debtor and does not extend to non-debtor co-

---

[1] Pursuant to the Court's Discovery Scheduling Order (ECF No. 48), the deadline for Initial Disclosures was set for December 10, 2024. In lieu of complying with their discovery obligations, the WCP Parties instead filed the suggestion in question.

4

defendants. In *Piccinin*, the Fourth Circuit acknowledged that "unusual circumstances" might justify extending the stay to non-debtor co-defendants, only where the interests of the non-debtor co-defendant are "so intimately intertwined with those of the debtor that the latter may be said to be the real party in interest."

Moreover, the Bankruptcy Code does not authorize extinguishing claims against non-debtors without the consent of affected claimants as extending such protections to non-debtors effectively grants them the benefits of discharge reserved for debtors, which courts have rejected. *See Harrington v. Purdue Pharma L.P.,* 144 S. Ct. 2071, 219 L. Ed. 2d 721 (2024).

Courts have emphasized that mere allegations of interconnected claims are insufficient to extend the stay to non-debtors. *See In re Johnson,* 548 B.R. 770 (Bankr. S.D. Ohio 2016) (finding that it "is axiomatic that § 362(a)(1) does not automatically give rise to a general stay of creditors' rights to pursue non-debtor codefendants, even those with some relationship to the debtor"). Instead, the non-debtor must demonstrate that the continuation of litigation would directly and adversely impact the bankruptcy estate. *See In re Strak, 2018 Bankr*. LEXIS 3936 (Bankr. D.N.J. Dec. 11, 2018). Where claims against the non-debtor are independent and do not involve property of the estate, the stay does not apply. Id.

The legal standards established under 11 U.S.C. § 362(a) and 11 U.S.C. § 105(a) clearly delineate the boundaries of the automatic stay's applicability. The analysis of these legal standards is essential for the Court in this case to determine whether the requested extension of the stay to the WCP Parties is justified considering Paret's bankruptcy proceedings.

**ARGUMENT**

I. **The Automatic Stay Applies Only to Debtors and Does Not Extend to Non-Debtors Absent Unusual Circumstances.**

In this case, the automatic stay provided under 11 U.S.C. § 362(a) applies exclusively to the debtor and property of the bankruptcy estate. It does not extend to non-debtor parties unless exceptional circumstances exist. Two primary exceptions where the stay may be extended to non-debtors: (i) when there is an "unusual situation" that warrants the extension or (ii) when litigation against the non-debtor will result in an "immediate adverse economic consequence" for the bankruptcy estate. *See Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61 (2d Cir. 1986); *Residential Capital, LLC v. Fed. Hous. Fin. Agency,* 2013 U.S. Dist. LEXIS 116008 (S.D.N.Y. Aug. 12, 2013).

An "unusual situation" arises "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *See Piccinin.* Furthermore, the court in *In re Metal Ctr., Inc.,* 31 B.R. 458 (Bankr. D. Conn. 1983), established that "[w]here . . . a debtor and a non-debtor are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law, then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code."

Furthermore, the court in *In re Metal Ctr., Inc.*, 31 B.R. 458 (Bankr. D. Conn. 1983) established that "[w]here . . . a debtor and a non-debtor are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law, then the Congressional

intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code."

Unlike the cases previously cited, where a non-debtor's liability is so intertwined with the debtor's that a judgment against the non-debtor is effectively a judgment against the debtor, the claims against the WCP Parties stand independently of Paret's obligations. Plaintiffs allege that the WCP Parties inequitably retained $600,000 of Dr. Kim's funds in the foreclosure of the 4910 Georgia Avenue property, which is irrespective of their alleged partnership with Paret. This conduct does not rely on or implicate Paret's liability, nor would a judgment against the WCP Parties result in an indirect judgment against Paret.

The second exception, where the automatic stay can be extended to a non-debtor due to an "immediate adverse economic consequence for the debtor's estate," is similarly inapplicable here. *See Residential Capital, LLC v. Fed. Hous. Fin. Agency.* The "fundamental question" a court must ask in determining if this exception applies is "whether the determination of the claims against the non-debtor will or will not affect the Debtor's assets and/or liabilities as they existed at the date of the petition." *See In re U.S. Air Duct Corp.,* 8 B.R. 848 (Bankr. N.D.N.Y. 1981).

Additionally, the argument advanced by the WCP Parties, suggesting that the existence of a putative partnership between Paret and Huertas entitles them to protection under the automatic stay[2], is unsupported by the law. In *Patton v. Beardon*, 8 F.3d 343, 348-49 (6th Cir. 1993), the court explicitly rejected the idea that a non-debtor's status as a general partner entitles it to the protections of the automatic stay afforded to the debtor partnership. The court emphasized that the roles of the non-debtor partner and the debtor partnership must be treated as distinct. Similarly, the mere assertion of a common law partnership between Paret and Huertas does not entitle the

---

[2] Notwithstanding the fact that the WCP Parties have contested this allegation at each step of the litigation at hand.

7

WCP Parties to the stay's protections. Their liability arises from their independent actions, not from any imputed liability related to Paret's bankruptcy estate.

The WCP Parties also fail to demonstrate that allowing this litigation to proceed would impose an "immediate adverse economic consequence" on Paret's bankruptcy estate. Plaintiffs' claims against the WCP Parties, i.e. the inequitable retention of $600,000, do not involve property of the estate or impede its administration. Resolving these claims would not deplete the bankruptcy estate but as *Webster v. DP Capital LLC, et al.*, Case No. 23-10025 (Bankr. D.D.C. 2023) is meant to clarify whether assets wrongfully held by the WCP Parties are partnership assets and should be marshaled for the estate's benefit. The WCP Parties have provided no evidence of interconnected insurance policies, shared liabilities, or any other scenarios that might justify extending the stay. In fact, WCP Parties have expressly contested any claims of partnership between Charles Paret and Daniel Huertas (and by extension, the WCP parties).

In light of the above, the automatic stay does not extend to the WCP Parties under the established facts and legal standards. *Patton v. Beardon*, 8 F.3d 343, 348-49 (6th Cir. 1993). The WCP Parties' conduct and liability are distinct from Paret's obligations and estate as they arise from the foreclosure of the property. The WCP Parties fail to demonstrate the existence of "unusual circumstances" or any adverse economic impact on Paret's bankruptcy estate. Accordingly, the Court should deny the motion to extend the stay to the WCP Parties.

**II.   WCP Is Estopped from Raising the Stay Due to Unreasonable Delay.**

The WCP Parties filed an involuntary Chapter 7 bankruptcy petition against Charles Paret in August 2023, *See In re Paret*, Case No. 23-217-ELG (Bankr. D.D.C. 2023). Despite having full knowledge of the bankruptcy proceedings from their inception, the WCP Parties waited until December 2024—over a year later—to raise the issue of an automatic stay. This delay

8

coincided with this Court's denial of their motion to dismiss, demonstrating that the suggestion of a stay is not motivated by the need to protect the bankruptcy estate but rather by a tactical attempt to delay and frustrate the litigation.

Under 11 U.S.C. § 105(a), a court may issue an injunction extending the automatic stay to non-debtors, but such relief requires proof of "unusual circumstances" as discussed in the first argument. Courts also require the party seeking the extension to demonstrate imminent and irreparable harm to the bankruptcy estate or the debtor's reorganization efforts. *See Gray v. Hirsch,* 230 B.R. 239, 243 (S.D.N.Y. 1999). The burden of proof lies squarely with the movant to establish a material threat to the debtor's estate or reorganization efforts. *See In re Aearo Techs. LLC,* 642 B.R. 891 (Bankr. S.D. Ind. 2022)

The WCP Parties cannot meet this burden. Their delay in raising the stay—over a year after filing the bankruptcy and only after the adverse ruling on their motion to dismiss— fail to justify any claim of urgency or imminent harm. *See Cook v. Blazer*, Civil Action No. 7:15cv456, 2016 U.S. Dist. LEXIS 79609, at *3-4 (W.D. Va. June 20, 2016) (quoting *Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 288 (2d Cir. 2003)) ("Nor can the stay be extended "solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision."). Such delay undermines their assertion that an extension of the stay is necessary to prevent harm to the bankruptcy estate. If the alleged harm were truly significant or immediate, the WCP Parties would have sought relief at the outset of the bankruptcy proceedings or shortly thereafter.

Moreover, the timing of the WCP Parties' request for an extension—following their failed motion to dismiss—suggests that the stay is being invoked as a litigation tactic rather than a legitimate effort to protect the debtor's estate. See *In re Lewis,* 227 B.R. 886, 890 (Bankr. W.D.

Ark. 1998), (held that section 502(b)(9) sets forth the general rule that a claim is allowed unless it is untimely.)

Even if the WCP Parties argue for an injunction under § 105(a), the extraordinary relief sought is unwarranted. To obtain such an injunction, they must satisfy the four-prong test for injunctive relief: (1) likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) harm to the enjoined party is outweighed by the harm to the movant; and (4) the public interest is served. *See In re GMI Grp., Inc., 598 B.R. 685 (Bankr. N.D. Ga. 2019); Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 20 (2008); *In re Union Tr. Philadelphia, LLC*, 465 B.R. 765 (Bankr. E.D. Pa.), aff'd, 460 B.R. 644 (E.D. Pa. 2011).

The WCP Parties fail on all counts. They cannot demonstrate irreparable harm, given their year-long delay, nor can they show that extending the stay serves the public interest, as it would frustrate Plaintiffs' ability to seek redress for their claims.

The WCP Parties' delay in raising the stay also distinguishes this case from scenarios where courts have found "immediate adverse economic consequence" justifying an extension. For example, claims against non-debtors who are guarantors, indemnitors, or critical to the debtor's reorganization efforts may warrant an extension of the stay. *See McCartney v. Integra Nat. Bank N*., 106 F.3d 506, 510-11 (3d Cir. 1997). Here, the WCP Parties have not demonstrated any such relationship or harm that would justify extending the stay. Their liability arises from their independent actions, and they fail to show any connection between the continuation of this litigation and harm to Paret's bankruptcy estate.

The WCP Parties' unreasonable delay in raising the automatic stay, coupled with their inability to demonstrate "immediate adverse economic consequence" or other "unusual circumstances," precludes them from obtaining the relief they seek. Their conduct reflects bad

faith and a tactical effort to delay proceedings rather than a legitimate concern for protecting the bankruptcy estate. Accordingly, the Court should deny the WCP Parties' motion to extend the stay.

**III.     Bad Faith as Grounds to Deny Extension of the Automatic Stay**

Courts have consistently held that invoking the automatic stay or seeking its extension in bad faith constitutes an abuse of process and should be denied. Conduct that reflects a strategic attempt to delay proceedings or gain an unfair advantage constitutes evidence of bad faith. For instance, in *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990), the court denied the debtor's discharge after finding that the failure to disclose material facts constituted a false oath in the bankruptcy case. Similarly, in *In re Lewis*, 227 B.R. 886, 891 (Bankr. W.D. Ark. 1998), the court found a Chapter 13 filing to be in bad faith where it was intended solely to circumvent state court orders in a divorce case. These cases underscore that the bankruptcy process cannot be weaponized to frustrate litigation or delay justice without a legitimate and equitable basis.

The doctrine of laches further supports the principle that unreasonable and unjustified delay in invoking bankruptcy protections, to the detriment of other parties, may defeat the extension of the automatic stay. In *Matthews v. Rosene*, 739 F.2d 249, 251-52 (7th Cir. 1984), the court applied equitable considerations to deny the debtor's invocation of the automatic stay, finding that the debtor's 33-month delay in challenging state court jurisdiction was unreasonable and resulted in prejudice to the creditor. The court emphasized that § 362 is designed to protect debtors but must not be used to frustrate the legitimate interests of creditors where the debtor bears responsibility for creating the delay.

In this case, the WCP Parties' actions provide clear evidence of bad faith. Despite ***initiating*** an involuntary Chapter 7 bankruptcy proceeding against Charles Paret in August 2023, the WCP Parties waited over a year—until December 2024—to suggest the applicability of the

automatic stay to this litigation. This delay is particularly suspect given that the invocation of the stay came immediately after this Court denied their motion to dismiss. Such timing strongly suggests a tactical maneuver designed to delay Plaintiffs' claims and avoid adverse rulings, rather than a genuine effort to protect the bankruptcy estate.

Furthermore, the WCP Parties have failed to present any evidence of imminent harm or adverse economic consequences to Paret's bankruptcy estate if this litigation were to proceed. The claims against the WCP Parties are based on their independent actions, including their retention of Dr. Kim's funds and the deliberate orchestration of a scheme to misappropriate those funds to finance larger loans. These actions are entirely separate from Paret's obligations and do not implicate the administration of his bankruptcy estate.

Additionally, if the Court grants extension of the stay the prejudice to Plaintiffs in this case would be evident. Plaintiffs have been pursuing their claims in good faith, only to face an eleventh-hour attempt by the WCP Parties to invoke the stay and delay the litigation. Such tactics frustrate the purpose of § 362, which is to balance the interests of debtors and creditors while ensuring the equitable administration of the bankruptcy process.

For these reasons, this Court should deny the WCP Parties' request to extend the automatic stay to this litigation.

### IV.   The Automatic Stay Should Not Be Extended to District Title

If any stay is granted, it should not be extended to District Title. District Title, like the WCP Parties, cannot claim protection under the automatic stay provisions of 11 U.S.C. § 362(a). The claims against District Title are independent of Charles Paret's bankruptcy estate and arise solely from its own actions and omissions in connection with the failed transaction involving Dr. Kim's $600,000 payment. These actions are distinct from any liabilities or obligations of Paret.

Extending the stay to District Title would be unwarranted because the two recognized exceptions to the automatic stay do not apply. As discussed, courts extend the automatic stay to non-debtors only in "unusual circumstances" or when litigation would cause an "immediate adverse economic consequence" for the debtor's bankruptcy estate. *See Teachers Ins. & Annuity Ass'n v. Butler; Residential Capital, LLC v. Fed. Hous. Fin. Agency*. District Title does not meet either criterion.

First, there is no "identity of interest" between District Title and Paret that would create the type of "unusual situation" required to extend the stay. District Title's liability arises solely from its own conduct in breaching its fiduciary duties as escrow agent and failing to safeguard Dr. Kim's purchase funds. A judgment against District Title would not be comparable to a judgment against Paret or his bankruptcy estate. Nor does District Title share any statutory or contractual obligations with Paret that would bind them in such a way as to justify an extension of the stay. *See Piccinin; In re Metal Ctr., Inc*.

Second, there is no evidence that allowing litigation to proceed against DP Capital would result in "immediate adverse economic consequences" for Paret's bankruptcy estate. *See Residential Capital, LLC v. Fed. Hous. Fin. Agency*. District Title's liability is based on its independent failure to meet the fiduciary standards expected of an escrow agent. Resolving Plaintiffs' claims against District Title will not deplete Paret's estate or impede its administration..

Accordingly, if any stay is granted, it should not be extended to District Title.

## **CONCLUSION**

For the reasons set forth, the Court should deny the WCP Parties' Suggestion of Bankruptcy and Imposition of Automatic Stay. Plaintiffs' claims against these non-debtors are independent of Paret's bankruptcy estate and do not meet the standards required for extension of

the stay under 11 U.S.C. § 362(a). Allowing this litigation to proceed is essential to ensure the equitable administration of justice and prevent abuse of the bankruptcy process.

WHEREFORE, based on the foregoing, Plaintiffs respectfully request that this Court deny the Suggestion of Bankruptcy and Imposition of Automatic Stay by the WCP Parties DP Capital (or in the alternative, extend the stay only to the WCP Parties, allowing this matter to proceed against District Title).

Dated: December 20, 2024

Respectfully submitted,

KIM GEORGIA AVENUE HOLDINGS, LLC
and
DR. EUNG WONG KIM,

By Counsel,

By: */s/ J. Chapman Petersen*
J. Chapman Petersen, Esq., Bar ID# 0448740
Federico J. Zablah-Siman, Bar ID#VA166
CHAP PETERSEN & ASSOCIATES, PLC
3970 Chain Bridge Road
Fairfax, Virginia 22030
(571) 459-2512 – Telephone
(571) 459-2307 – Facsimile
jcp@petersenfirm.com
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this Friday, December 20, 2024, the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

                    /s/
                Federico J. Zablah-Siman