IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. EUNG KWON KIM, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:23-cv-1101-TJK |
| ) | |
| v. ) | |
| ) | |
| DP CAPITAL LLC, *et al*. ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF SUGGESTION OF
BANKRUPTCY AND IMPOSITION OF AUTOMATIC STAY**

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP") and WCP 4910 Georgia Ave NW LLC ("WCP 4910") (collectively, the "WCP Parties" and each individually a "WCP Party"), by and through undersigned counsel, pursuant to this Honorable Court's minute order of December 22, 2025, and reply to the Plaintiffs' Response in Opposition to WCP Parties Suggestion of Bankruptcy and Imposition of Automatic Stay (the "Opposition," as found at DE #52) filed by Kim Georgia Ave, LLC ("KGAL") and Dr. Eung Wong Kim ("Dr. Kim") (collectively, the "Plaintiffs") as follows:

**I.      Introduction**

Two of the three WCP Parties are being sued by Wendell Webster (the "Trustee"), the chapter 7 trustee of the bankruptcy estate of Charles Paret ("Mr. Paret" or the "Debtor"), for a declaratory judgment establishing that there existed a common law partnership between Mr. Paret and Daniel Huertas ("Mr. Huertas"), the principal of the WCP Parties. The WCP Parties are also being sued, herein, for unjust enrichment, on the theory that there existed a common law partnership between Mr. Paret and Mr. Huertas. The WCP Parties deny—vehemently—that there ever existed a common law partnership (or any other form of partnership) with Mr. Paret. And

1

there thusly exists a somewhat unusual procedural posture whereby two of the WCP Parties are presently defending claims premised on the same factual questions in both this Honorable Court and the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court").

The legal question instantly implicated is whether the right to sue the WCP Parties, for recognition of an alleged common law partnership with Mr. Paret, is an asset of Mr. Paret's bankruptcy estate under the control of the Trustee. If so, by its express terms, Section 362 of Title 11 of the United States Code (the "Automatic Stay") prohibits the instant litigation from proceeding. If not, there is nonetheless a need to confront the eccentricities of parallel path litigation in two related courts, and the potential impact of one case's litigation and disposition upon the other case.

The WCP Parties maintain the Automatic Stay is applicable and, as such, the claims against the WCP Parties ought to proceed no further in this Honorable Court until such a time as the partnership dispute is resolved by the Bankruptcy Court. The WCP Parties take no position on whether or not the Automatic Stay does, too, militate in favor of a cessation of the Plaintiffs' efforts to pursue claims against District Title ("District Title"), a co-defendant herein confronting allegations that do not appear to turn—one way or another—on the existence, *vel non*, of a common law partnership between Mr. Paret and Mr. Huertas.

## II.      Relevant Factual Background

### a. This Case

This case was filed on April 20, 2023. *See* Complaint, DE #1. After initial motions practice, the Plaintiffs filed an amended complaint on September 15, 2023. *See* Amended Complaint, DE #36. The defendants named in the Amended Complaint are (i) Mr. Paret; (ii) 4910 Georgia Ave Holdings LLC ("4910 GAHL"); (iii) Coloma River Holdings LLC ("CRHL"); (iv) the WCP

Parties; and (v) District Title. The Plaintiffs allege CRHL to be wholly owned by Mr. Paret, Amended Complaint, DE #36, at ¶ 10, and 4910 GAHL to be partially owned by Mr. Paret, *Id.* at ¶ 9.

The sole cause of action being pursued against the WCP Parties in this case is for unjust enrichment. *Id.* at ¶¶ 136-141. The predicate for this claim is that (i) Mr. Huertas and Mr. Paret formed a "*de facto* partnership," *id.* at ¶ 26; (ii) Mr. Paret and 4910 GAHL offered to sell three condominium units to the Plaintiffs for $600,000.00, *id.* at ¶ 40; (iii) the Plaintiffs proceeded to tender that purchase price in exchange for three condominium units, *id.* at ¶ 56; (iv) the WCP Parties knew of this sale "by virtue of their role in the Partnership" with Mr. Paret, *id.* at ¶ 60; (v) the sale was never recorded, *id.* at ¶ 62; (vi) the lack of recording was intentional on the part of Mr. Paret, *id.* at ¶ 65; (vii) the WCP Parties then loaned monies to 4910 GAHL, securing such loans with deeds of trust on the condominium project, *id.* at ¶¶ 72-77; (viii) Mr. Paret and 4910 GAHL used the Plaintiffs' purchase proceeds as closing costs associated with the two loans from the WCP Parties, *id.* at ¶¶ 137-138; (ix) the WCP Parties' deeds of trust were later foreclosed, *id.* at ¶¶ 83-85; (x) the Plaintiffs were not given notice of the foreclosure, *id.* at ¶ 86; and (xi) "[i]t is inequitable for the WCP Entities to retain the $600,000 as they have received the benefit of the money without providing anything in return to Plaintiffs i.e. the Condo Units," *id.*

The elements of a claim for unjust enrichment are familiar in nature. As this Honorable Court has had occasion to note in this case:

> A plaintiff bringing an unjust-enrichment claim must allege that he "conferred a benefit on the defendant," that "the defendant retain[ed] the benefit," and that **"under the circumstances, the defendant's retention of the benefit is unjust."** When assessing these claims, courts must look to "the nature of the dealings between the recipient of the benefit and the party seeking restitution."

*Eung Kwon Kim v. DP Capital LLC*, 2024 U.S. Dist. LEXIS 169885, at *23 (D.D.C. Sep. 20, 2024) (quoting *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016)

(quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)); *4934, Inc. v. D.C. Dep't of Emp. Servs.*, 605 A.2d 50, 56 (D.C. 1992)) (emphasis added).

Core to the Plaintiffs' unjust enrichment claim in this case is the notion that the WCP Parties were the beneficiaries of a partnership with Mr. Paret. The Plaintiffs expressly rely on the alleged partnership in endeavoring to impute knowledge of the botched sale to the WCP Parties, asserting the WCP Parties knew of the transaction "by virtue of their role in the Partnership" with Mr. Paret. First Amended Complaint, DE #36, at ¶ 60. Indeed, as noted in the memorandum opinion denying the WCP Parties' motion to dismiss this case, "[t]o start, Plaintiffs allege that the WCP Entities *knew* about the scheme to take Plaintiffs' money without ever providing the condominium units." *Eung Kwon Kim*, 2024 U.S. Dist. LEXIS 169885, at *26 (citing Amended Complaint, DE #36, at ¶¶ 66, 138) (emphasis in original).

So while the existence, *vel non*, of a partnership is not alone dispositive of the instant case, it genuinely does not appear the Plaintiffs can succeed in their claims against the WCP Parties absent showing a partnership to have existed. But for the putative partnership, the WCP Parties would be only third party lenders who closed a loan with Mr. Paret and his company, unaware that Mr. Paret had allegedly defrauded the Plaintiffs and used their monies to pay processing fees. And it accordingly appears the Plaintiffs must litigate—and, through their Amended Complaint, are litigating—the existence, *vel non*, of the alleged partnership.

### b. Charles Paret Bankruptcy & Ensuing Posture in this Case

On August 4, 2023, three entities—including two of the WCP Parties—filed an involuntary bankruptcy petition against Mr. Paret in the Bankruptcy Court. *See In re Paret*, Case No. 23-217-ELG (Bankr. D.D.C. 2023) (the "Paret Bankruptcy"). Upon Mr. Paret's default, an order for relief was entered in his bankruptcy case, effective September 6, 2023. *See* Paret Bankruptcy at DE #29.

4

Counsel for Mr. Paret gave notice of the bankruptcy filing, in this Honorable Court, on October 2, 2023. *See* Judicial Notice, DE #40. At the time the notice of bankruptcy filing was given, the WCP Parties had already filed a motion to dismiss, DE #39. The WCP Parties would not affirmatively undertake any further activity in this case until filing an answer on October 15, 2024. *See* Answer, Affirmative Defenses and Reservation of Rights, DE #46. In filing their answer, the WCP Parties indicated that there is an issue with the partnership issue being adjudicated in the Bankruptcy Court, and this Honorable Court, simultaneously. *Id.* at ¶ 12. The WCP Parties also noted diversity jurisdiction to be lacking in this case but federal jurisdiction to be nonetheless extant because of the nexus to the Paret Bankruptcy. *Id.* at ¶ 8.

Though Mr. Paret is a named defendant in this action, and has not filed an answer to the Amended Complaint, no default has been sought against him, presumably out of recognition of the Automatic Stay. *See* Docket, *passim*. Similarly, though CRHL is a defendant hereto, the entity has neither filed an answer nor been subject to a request for default relief. *Id.* Notably, CRHL is not, to the best of the WCP Parties' knowledge, a debtor in bankruptcy. There also has been neither an answer from, or default notice directed toward, 4910 GAHL. *Id.* The WCP Parties also do not believe 4910 GAHL to be a debtor in bankruptcy.

### c. *Webster v. DP Capital, LLC, et al.*

On July 24, 2023, Mr. Paret brought suit against Mr. Huertas in the Superior Court for the District of Columbia. *See Webster v. DP Capital, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023) (the "Partnership Dispute") at DE #1-1. The Partnership Dispute was thereafter removed to the Bankruptcy Court on September 1, 2024. *Id.* at DE #1.

The procedural posture of the Partnership Dispute is a touch tortured insofar as Mr. Paret's bankruptcy commenced in chapter 7, under the helm of the Trustee, but was then converted to

chapter 11, to be helmed by Mr. Paret as a debtor-in-possession. *See* Paret Bankruptcy at DE #1; DE #54. The conversion to chapter 11 was, however, short-lived, with Mr. Paret's case thereafter being converted back to chapter 7. *Id.* at DE #96.

While in chapter 7, Mr. Paret attempted to amend his complaint in the Partnership Dispute. *See* Partnership Dispute at DE #8. Whether or not he had the capacity to do such while his estate was helmed by a chapter 7 trustee is an interesting question that was never answered since, once his case was converted to chapter 11, Mr. Paret filed a second amended complaint in his capacity as a debtor-in-possession. *Id.* at DE #14. Once the Paret Bankruptcy was returned to chapter 7, Mr. Webster, in his capacity as chapter 7 trustee, filed a third amended complaint. *Id.* at DE #38-1.[1]

A consent order granting in part, and denying in part, a motion to dismiss the third amended complaint was entered on November 12, 2024. *Id.* at DE #46.

The two surviving causes of action in the Partnership Dispute seek (i) a declaratory judgment as to the existence of a partnership between Mr. Paret and Mr. Huertas; and (ii) damages stemming from a breach of the putative partnership. *Id.* at DE #38-1, ¶¶ 48-50, 68-73.

### III.    Relevant Legal Posture

Title 28 of the United States Code provides, *inter alia*, that bankruptcy courts shall function "as a unit of the district court. . ." 28 U.S.C. § 151. Jurisdiction over bankruptcy cases is actually vested in the district courts, 28 U.S.C. § 1334, as is jurisdiction over all matters "related to" bankruptcy cases, *id.* District courts, in turn, "may" provide for the referral of such matters to bankruptcy courts. 28 U.S.C. § 157(a).

In this Honorable Court (as in almost every United States District Court), the referral discretion afforded by Section 157(a) is automatically exercised. DCt.LBR 5011-1(a) ("Pursuant

---

[1] For ease of reference, a copy of the third amended complaint is attached hereto as Exhibit A.

to 28 U.S.C § 157(a), all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges of this District.").

### IV. Argument: The Automatic Stay is Applicable to the Claim Against the WCP Parties

In their Opposition, the Plaintiffs focus on the general notion that the Automatic Stay is not applicable to parties that are not themselves debtors in bankruptcy. *See* Opposition, DE #52, *passim*. However, as that brief does fleetingly observe, the Automatic Stay is applicable not merely to parties but, too, to assets of a bankruptcy estate. *Id.* at p. 4 ("Under 11 U.S.C. § 362(a), the automatic stay applies only to actions against the debtor or property of the bankruptcy estate."). Applicability of the Automatic Stay, in this case, turns on that necessary nuance: while the WCP Parties are most certainly not debtors in bankruptcy, the claim being pursued against them is reliant upon disposition of a claim that is an asset of Mr. Paret's bankruptcy estate.

When a bankruptcy case is commenced, an estate is created, being comprised—with certain inapplicable exceptions—of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Included amongst the legal and equitable interests comprising a debtor's bankruptcy estate are causes of action held by a debtor. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983). *See also Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986) ("The scope of section 541 is broad, and includes causes of action.") (citing *Whiting Pools, Inc.*, 462 U.S. at 205); *Brookview Apts., L.L.C. v. Hoer (In re Weigh)*, 576 B.R. 189, 197 (Bankr. C.D. Cal. 2017) ("These litigation rights were the only remaining estate assets of potentially significant value other than the St. Louis Properties. . ."); *Meritage Homes of Nev., Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC)*, 478 B.R. 403, 407 (D. Nev. 2012) (". . . the

7

South Edge estate retained some assets following confirmation, including certain litigation claims. . .").

The Automatic Stay prohibits, *inter alia*, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). And where a creditor and a bankruptcy trustee both have the right to pursue a comparable cause of action, even if they would potentially occasion different recoveries, a creditor is prohibited from pursuing the subject claim until such a time as the litigation asset is abandoned by a bankruptcy trustee. *See, e.g. In re Berg*, 376 B.R. 303, 312 (Bankr. D. Kan. 2007) ("Is this case, the Bank's standing to pursue the UFTA claim was cut off when the bankruptcy was filed. The question is whether it has been restored. The Court finds that it has not. The Trustee did not abandon the claim, it has not been determined that Trustee did not have a viable claim, and there is no court order allowing the Bank to pursue the claim.").

The bankruptcy of Howrey LLP ("Howrey") demonstrated these doctrines in a comparable posture. There, the bankruptcy trustee threatened to sue—and then proceeded to actually sue— Haynes and Boone, LLP ("Haynes & Boone") for profits realized on legal matters transferred to Haynes & Boone by a departing member of the Howrey law firm. *In re Howrey LLP*, 492 B.R. 19, 20 (Bankr. N.D. Cal. 2013).

At the core of the Howrey trustee's claims against Haynes & Boone was the partnership laws of the District of Columbia. *Id.* at 21. The question was whether or not District of Columbia partnership law imposed upon former partners of a law firm a duty "to account to the firm for unfinished business on hourly rate matters." *Id.* If so, the monies collected by Haynes & Boone would amount to fraudulent conveyances, avoidable by a bankruptcy trustee. *Id.* If not, the monies collected by Haynes & Boone would be beyond the purview of the Howrey bankruptcy estate. *Id.*

Haynes & Boone, in turn, sought to file a declaratory judgment action in the Superior Court for the District of Columbia, asking that court to determine the relevant issues of local partnership law. *Id.* As the bankruptcy court summarized of the resultant issue:

> The only automatic stay issue worth addressing here is whether forcing the Trustee or the Creditors Committee to defend the Dec Relief Action in the District of Columbia would amount to control over property of the estate. Stated otherwise, would it interfere with Trustee's prosecution of the Adversary Proceeding where the very same legal issue that can and no doubt will be raised by H&B (and perhaps other law firm defendants in similar adversary proceedings).

*Id.* at 22.

The *Howrey* Court ultimately found that allowing litigation to pend, concerning the same subject matter, in another court, would be a violation of the Automatic Stay: "Whatever the ultimate outcome, splitting the Trustee's causes of action so that they are asserted here but defended elsewhere interferes with and amounts to control of those causes of action." *Id.* at 23.

This case is comparable to *Howry*. The Trustee is suing two of the WCP Parties, in the Bankruptcy Court, to establish a partnership and to recover damages from an alleged breach thereof. Meanwhile, the Plaintiffs in this suit are raising the same exact partnership issues and thereby forcing the WCP Parties to defend those assertions in this Honorable Court.

To be sure, the risk occasioned by dual track litigation is not merely one of inconvenience. To the contrary, especially since Mr. Paret is a party to the instant case (even though this suit is assuredly stayed as against Mr. Paret), there is a risk that estoppel would bind the Trustee to any factual findings or legal conclusions made in this case. *See, e.g.*, *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Mgmt., LLC)*, 638 B.R. 291, 314 (Bankr. D.N.J. 2022) ("The Original TCC argues that collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case. Debtor will not be a party to continued litigation against the nondebtor

9

defendants, thus, in the Original TCC's view, Debtor cannot be collaterally estopped from later litigating any issue decided in those actions. The Third Circuit explicitly cautioned against this type of logic. . .") (citing *Allen v. McCurry*, 449 U.S. 90 (1980); *In re W.R. Grace & Co.*, 115 F. App'x 565 (3d Cir. 2004)); *Am. Film Techs. v. Taritero (In re Am. Film Techs.)*, 175 B.R. 847, 850 (Bankr. D. Del. 1994). And, even if estoppel doctrines did not apply, a more basic risk would be occasioned through twice litigating the same factual dispute:

> . . . once a witness has testified to a fact, or what sounds like a fact, that witness may be confronted with his prior testimony under oath in a future proceeding directly involving Manville, whether or not Manville was a party to the record on which the initial testimony was taken. Once an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time. No matter what Lake may stipulate, the thousands of other claimants and cross-claimants who are after Manville's assets, would be entitled to use the product of such discovery.

*In re Johns-Manville Corp.*, 40 B.R. 219, 225 (S.D.N.Y. 1984).

To be sure, if the WCP Parties prevail in this litigation on the basis that no partnership existed, they will have at least an argument that the Trustee of Mr. Paret's estate is accordingly estopped from seeking a declaration as to the existence of the partnership and any damages stemming from a breach thereof. But even if he is not *per se* estopped, the WCP Parties will be able to use discovery taken in this action to impeach the Trustee's witnesses in his own action.

The pragmatic ramifications of this reality are striking. If the Automatic Stay is not found to apply *sub judice*, the WCP Parties will, no doubt, seek to take the deposition of Mr. Paret as part of the discovery process herein. They will, as part of that deposition, work to undermine assertions concerning the existence of a partnership. And yet not only will the Trustee not be present for such a deposition but the Trustee will, too, be thereafter bound to watch Mr. Paret— undoubtedly the star witness in the Trustee's case—be impeached with precisely this deposition testimony when testifying in the Partnership Dispute.

10

This is exactly the occurrence the *Howry* Court looked to avoid in holding the Automatic Stay to be applicable. This is why the *Berg* Court has so firmly cautioned that when creditors and a bankruptcy trustee share overlapping litigation rights, only the trustee may pursue such claims until abandoned. And this is why case law cautions against the potentially deleterious estoppel and impeachment impacts that may be occasioned if a litigant is allowed to impinge upon claims that are an asset of a bankruptcy estate.

### V.  Argument: Without the Paret Bankruptcy, This Honorable Court Would Lack Jurisdiction

To whatever extent the Plaintiffs seek to assert that the issues in this case, and the issues in the Paret Bankruptcy and Partnership Dispute, do not actually substantively overlap, such an assertion is misplaced. Even putting aside the near-absolute factual overlap between the Partnership Dispute and the lone claim against the WCP Parties in this case, a legal reason reveals the intimacy of the two proceedings: but for the Paret Bankruptcy, this Honorable Court would lack jurisdiction to hear the instant case at all.

Notwithstanding the Plaintiffs' assertion in the Amended Complaint, the parties to this suit are not actually diverse in the jurisdictional sense of the word. The Plaintiffs are both citizens of the State of Maryland. Amended Complaint, DE #36, at ¶¶ 1-2. WCP is a limited liability company. *Id.* at ¶ 4. Under controlling law, a limited liability company takes the citizenship of all of its members. *See, e.g., Jemal's Mickelson, LLC v. Tavern*, 2019 U.S. Dist. LEXIS 246220, at *2 (D.D.C. Oct. 10, 2019) ("For purposes of diversity jurisdiction, an LLC is deemed a 'citizen of the jurisdiction of its members.'") (quoting *Shulman v. Voyou, LLC*, 305 F. Supp. 2d 36, 40 (D.D.C. 2004)). WCP, in turn, has numerous members, including at least one person who is a citizen of Maryland.

There accordingly is not jurisdiction *sub judice* under Section 1332 of Title 28 of the United States Code. And none of the causes of action in the Amended Complaint implicate questions of federal law, except to the extent that District of Columbia law is to be regarded as federal law. U.S. Const. art. 1, § 8, cl. 17. Yet even if the District of Columbia Code is to be accepted as federal law under Article 1 of the Constitution, the lone statutory cause of action in this case has been dismissed. *See* Memorandum Opinion & Order, DE #44, at pp. 10-13. And there accordingly is not a jurisdictional basis correlative to the existence of any federal question outside of those concerning the bankruptcy system. 28 U.S.C. § 1331.

There is, however, jurisdiction *sub judice* for the simple reason that this litigation is "related to" Mr. Paret's bankruptcy proceeding. 28 U.S.C. § 1334(b). Such is assuredly sufficient to permit this case to continue pending (regardless of whether or not the suit is referred to the Bankruptcy Court under the local rules of this Honorable Court). Yet such also creates a prism whereby the Plaintiffs cannot feign a lack of overlap with the Paret Bankruptcy whilst continuing to prosecute their claims in this Honorable Court.

### VI.     Argument: The Automatic Stay Cannot be Waived and Has Not Been Annulled

Finally, the Plaintiffs urge that invocation of the automatic stay has either been waived, or is barred by the doctrine of laches, since the Paret Bankruptcy was pending for more than a year before the issue was raised herein. *See* Opposition, DE #52, at § III. Yet this contention is problematic because (i) the Paret Bankruptcy was noted on the docket of this case, by Mr. Paret's own counsel, within weeks of an order for relief being entered; (ii) the Plaintiffs—seemingly cognizant of the Automatic Stay—have themselves resisted not merely seeking a default against Mr. Paret but, too, against, two non-debtor entities in which he holds an interest, out of a seeming

cognizance of the breadth of the Automatic Stay; and (iii) the automatic stay cannot be waived or subjected to the doctrine of laches.

Initially, it bears emphasis that the WCP Parties have never tried to hide the Paret Bankruptcy from this Honorable Court. As noted *supra*, a suggestion of bankruptcy was promptly filed by Mr. Paret's counsel. All parties hereto were knowledgeable of the bankruptcy at that juncture, if not sooner. The next filing by the WCP Parties was an answer that raised this very issue. At a scheduling conference, counsel for the WCP Parties again raised the issue. The suggestion of bankruptcy by the WCP Parties was filed a few weeks thereafter. The WCP Parties have not taken any affirmative actions in this case—aside from docketing an answer that raises this very issue and participating in the aforementioned scheduling conference—since the order for relief was entered in the Paret Bankruptcy.

Substantively, the Debtor relies on the cases of *In re Calder*, 907 F.2d 953 (10th Cir. 1990) and *Matthews v. Rosene*, 739 F.2d 249 (7th Cir. 1984), for the proposition that laches can defeat the Automatic Stay. Yet these are two of the cases that were rejected by the United States Bankruptcy Court for the District of Columbia, as far back as 1994, in holding "actions taken in violation of the automatic stay are void unless the court grants an annulment of the stay under section 362(d)." *Rothenberg v. Ralph D. Kaiser Co. (In re Rothenberg)*, 173 B.R. 4, 14 (Bankr. D.D.C. 1994). That holding was reiterated scantly over a year ago, when the Bankruptcy Court noted, *inter alia*, "[t]his Court agrees with the majority that acts taken in violation of the automatic stay are void. As a result, any action taken in violation of the stay is void, unless the automatic stay is annulled." *In re HP Bennett, LLC*, 2023 Bankr. LEXIS 3010, at *10 (Bankr. D.D.C. Dec. 22, 2023) (citing *Stancil v. Bradley Invs., LLC (In re Stancil)*, 487 B.R. 331, 338 (Bankr. D.D.C. 2013); *In re Sklar*, 626 B.R. 750, 762-63 (Bankr. S.D.N.Y. 2021)).

Yet even if *Calder* or *Matthews* were not rejected in this district, the cases would be facially inapposite. In *Matthews*, the debtor voluntarily sought bankruptcy protection in 1973 and then, four years later, sued a creditor in state court, seeking declaratory relief. *Matthews*, 739 F.2d at 250. The creditor counterclaimed and succeeded on the counterclaim at trial. *Id.* In 1981, the creditor obtained a wage garnishment against the debtor. *Id.* Then, and only then, did the Debtor raise the issue with the bankruptcy court; some eight years after the bankruptcy was filed, some four years after the debtor commenced the state court litigation, and some three years after a judgment was entered, the debtor finally notified the bankruptcy court of these occurrences. These facts are not nearly comparable to the instant case where (i) a suggestion of bankruptcy was filed by Mr. Paret within a few weeks of the order for relief being entered; (ii) WCP took no actions in this case, post-bankruptcy, without flagging the bankruptcy issue; and (iii) this case is pending in a court of which the Bankruptcy Court is a "unit."

The same goes for *Calder*, where the debtor "actively litigated the state court action and did not provide notice of the pending Chapter 13 proceeding until just before the state court was to enter a final judgment." *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990).

Even putting aside that *Matthews* and *Calder* have both been rejected in this district, this case is also unlike *Calder* and *Matthews* for the simple reason that the Plaintiffs have not made the Trustee a party hereto. While part of the issue is, no doubt, the core problem associated with asking the WCP Parties to simultaneously litigate the same factual issue in two courts, the bigger problem is the prejudice such will occasion upon the Trustee. Again, as noted *supra*, the issue at hand is not application of the Automatic Stay against a debtor in bankruptcy; the issue at hand is application of the Automatic Stay against efforts to liquidate a putative asset of a bankruptcy estate.

14

## VII. District Title

A portion of the Opposition urges the Automatic Stay not halt proceedings against District Title. *See* Opposition, DE #52, at § IV. The WCP Parties take no position on this request, recognizing that the claims against District Title do not appear to implicate the Trustee's theory of a partnership in the Paret Bankruptcy.

Similarly, if this case is to be referred to the Bankruptcy Court, pursuant to DCt.LBR 5011-1(a), the WCP Parties take no position on whether the claims against District Title ought to be first severed from the rest of the litigation.

## VIII. Conclusion

WHEREFORE, the WCP Parties respectfully pray this Honorable Court (i) stay this case until the earlier of (a) disposition of the Partnership Dispute by the Bankruptcy Court; or (b) entry of an order affording relief by the Automatic Stay, by the Bankruptcy Court; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 3, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for DP Capital LLC, WCP Fund I LLC, and WCP 4910 Georgia Ave NW LLC*

*[Certificate of Service on Following Page]*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of January, 2025, a copy of the foregoing was served via this Honorable Court's CM/ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig