IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. EUNG KWON KIM, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:23-cv-1101-TJK |
| | ) | |
| v. | ) | |
| | ) | |
| DP CAPITAL LLC, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO DISMISS**

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP") and WCP 4910 Georgia Ave NW LLC ("WCP 4910") (collectively, the "WCP Parties" and each individually a "WCP Party"), by and through undersigned counsel, pursuant to LCvR 7(d), and in reply to the opposition (the "Opposition," as found at DE #68) of Kim Georgia Ave, LLC ("KGAL") and Dr. Eung Wong Kim ("Dr. Kim") (collectively, the "Plaintiffs") to the motion for summary judgment or, in the alternative, to dismiss (the "Motion," as found at DE #66) of the WCP Parties, state as follows:

I.   **Introduction**

When the WCP Parties filed their answer in this case, they asserted an affirmative defense specifically noting the lack of subject matter jurisdiction. *See* Answer, DE #46, at ¶ 8. Approximately two months later, when briefing issues related to the bankruptcy of Charles Paret, the WCP Parties reiterated the absence of subject matter jurisdiction. *See* Reply in Support of Suggestion of Bankruptcy and Imposition of Automatic Stay, DE #53, at § V ("Notwithstanding the Plaintiffs' assertion in the Amended Complaint, the parties to this suit are not actually diverse in the jurisdictional sense of the word.").

1

After mediation of this case failed, the WCP Parties elected to file the Motion. In so doing, they have followed well-settled precedent establishing that issues of subject matter jurisdiction may be raised at any time. Transparently, their motivation is simply to staunch their incursion of legal fees in a case where discovery does not appear to be inviting any cogent theory of liability on their part but, equally, where they are cognizant that substantive summary judgment briefing on the merits, *vel non*, of the Plaintiffs' claim will only invite the further and deeper incursion of fees. The Motion is not brought in bad faith, is not a surprise tactic previously well-concealed from counterparties, and is not intended to advance any vexatious purpose. The Motion is, rather, an acknowledgement that (i) this case is not apparently prone to amicable resolution and accordingly likely to continue to go forward, (ii) the Plaintiffs have declined to dismiss the WCP Parties from this litigation despite being told—multiple times, formally and informally—of the jurisdictional defect, and (iii) there is no utility in continuing to feign the existence of jurisdiction when none is afoot.

The Plaintiffs' Opposition is concerning. The document objectively misstates the record, suggesting the absence of diversity jurisdiction is now being raised for the first time. *See* Opposition, DE #68, at p. 3 ("Now, for the first time, they assert that this Court lacks diversity jurisdiction because a member of defendant WCP Fund I, LLC, is domiciled in Maryland. This fact has ostensibly been known to the WCP Parties since the beginning of the litigation.") (citations to Motion omitted). The document suggests the defense of an absence of jurisdiction has been waived, *id.* at p. 2, even though such was expressly stated as an affirmative defense in the WCP Parties' answer. And the document seemingly suggests the declarations appended to the Motion are not sufficient evidence of the jurisdictional defect even though the Plaintiffs have declined—

both before the Motion was filed and during the near-month the Motion has pended—to endeavor to take any jurisdictional discovery.

To be sure, context animates the Opposition. Discovery in this case has borne facts detrimental to the Plaintiffs' case; the deposition of KGAL revealed that the Plaintiffs were actually represented by counsel in connection with the at-issue real estate transaction, which raises myriad questions since it would seem an attorney would have been likely to understand a sale of real estate requires the execution and recordation of a deed. Discovery has also revealed documents showing the WCP Parties did not know—at any time relevant—that Charles Paret had taken money from the Plaintiffs. And discovery has, too, shown Mr. Kim to be a seasoned real estate investor and not a naïve dupe awe-stricken by the formalities of real estate sales. So the exuberance of the Opposition is, at least somewhat, emblematic of a "doth protest too much" ethos.

Yet the Plaintiffs' litigation tactics, and the merits of the Plaintiffs' claims, matter little for instant purposes. The only two questions presently before this Honorable Court are (i) whether there is an absence of subject matter jurisdiction; and (ii) whether a motion filed long before dispositive motions come due, when discovery is still ongoing, is so tardy as to denote a waiver of the grounds of relief sought therein. These questions are resolved in favor of the WCP Parties.

II.     **Argument: The Motion Should be Granted**

    a.  **There is a Lack of Diversity Jurisdiction**

The Opposition does not meaningfully dispute the lack of diversity jurisdiction in this case. While the Plaintiffs do devote three sentences, Opposition, DE #68, at p. 3, to suggesting WCP could have provided more evidence of citizenship, the document does not (i) suggest WCP to be errant; (ii) produce any countervailing documentation; or (iii) append a Rule 64(d) declaration indicating a need to take discovery on the matter.

Nor does the Opposition dispute the underlying theory that a limited liability company takes the derivative citizenship of its members, or that parties must be fully diverse for diversity jurisdiction to be extant. *Id.*, *passim*.

Lest there be any issue as to sufficiency of the unrebutted evidence, though, case law well supports that a declaration is sufficient to establish citizenship for purposes of ascertaining jurisdiction, *vel non*. *See IMAPizza, LLC v. At Pizza Ltd.,* 334 F. Supp. 3d 95, 109 (D.D.C. 2018) ("Finally, in order to ensure that it has diversity jurisdiction over the 'passing off' claim, the Court will require IMAPizza to submit an affidavit establishing its citizenship."); *BGC Partners, Inc. v. Avison Young (Can.) Inc.*, 115 F. Supp. 3d 119, 125 n.6 (D.D.C. 2015) ("Avison Young argues that BGC's declaration in support of the plaintiffs' citizenship is insufficient. BGC has provided the declaration of Mark Prasad, who has personal knowledge of the partnership structure of BGC Holdings, L.P. BGC Holdings' members constitute parties for the purposes of determining citizenship because BGC Holdings, L.P. is a member of another partnership which, in turn, is a member of plaintiff G&E Acquisition Company, LLC. Prasad declares that he has reviewed the business records of BGC Holdings, L.P., which are kept in the ordinary course of business, and has determined that a number of its members have been citizens of the district of Columbia, Illinois, Maryland, and Virginia at all relevant times. This declaration is sufficient to establish the citizenship of the plaintiffs.") (internal citation omitted).

To be sure, it does not appear anyone is actually claiming that (i) Jason Shrensky is not the trustee and beneficiary of the Jason Shrensky Revocable Trust; (ii) the Jason Shrensky Revocable Trust is not a member of WCP; and/or (iii) Jason Shrensky does not reside—and has not historically resided—in Maryland. And to the extent the Plaintiffs urge declarations to be

4

insufficient to establish these facts, such a position is belied by this Honorable Court's own precedent.

### b. An Absence of Subject Matter Jurisdiction May be Raised at Any Time

The Opposition urges the WCP Parties have waived the defense of an absence of diversity jurisdiction by waiting too long to raise the matter. Such a proposition is both legally inaccurate and at odds with the record herein. This is an issue that has been noted, time and again, since an answer was first docketed. That the Plaintiffs chose to ignore this issue—despite the repeated formal and informal pleas of the WCP Parties—does not, in turn, permit the Plaintiffs to now argue the issue has atrophied. And to the extent the Plaintiffs suggest that such a problem cannot be raised via motions practice when discovery is near completion, such is plainly contra to applicable law.

As a starting point, the WCP Parties flagged this issue in their answer. *See* Answer, DE #46, at ¶ 8 ("As and for their third affirmative defense, the WCP Parties assert this Honorable Court to be without diversity jurisdiction (though the WCP Parties do believe federal jurisdiction may nonetheless exist pursuant to Section 1334 of Title 28 of the United States Code)."). That was literally the WCP Parties' first filing after their motion to dismiss on substantive grounds was denied. It is difficult to construe an affirmative defense, being raised at the time required by rule, Fed. R. Civ. P. 12(b)(1), as being tardy—let alone so tardy as to amount to a waiver thereof.

Equally, when the WCP Parties soon thereafter suggested the bankruptcy of Charles Paret ("Mr. Paret") to act as a stay upon these proceedings, they again raised this issue. *See* Reply in Support of Suggestion of Bankruptcy and Imposition of Automatic Stay, DE #53, at § V ("Notwithstanding the Plaintiffs' assertion in the Amended Complaint, the parties to this suit are not actually diverse in the jurisdictional sense of the word.").

The WCP Parties did not prevail in urging Mr. Paret's bankruptcy to be so related to this case as to invoke bankruptcy jurisdiction and, by extension, invocation of the automatic stay. The WCP Parties respect this Honorable Court's ruling on that point and have proceeded accordingly. Yet, equally, they have proceeded knowledgeable that if there does not exist bankruptcy jurisdiction, there is accordingly a lack of federal jurisdiction. So, after mediation failed, the WCP Parties elected to file an appropriate dispositive motion.[1]

Raising the issue at this juncture is legally appropriate. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004) ("Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment.") (citing *Capron v. Van Noorden*, 6 U.S. 126 (1804)).

This is also an issue that is frequently explored during the summary judgment phase of civil proceedings—a phase at which this case has not otherwise arrived, but for the early docketing of the at-issue Motion well before summary judgment entreaties come due. *See, e.g.*, *Office & Prof'l Emps. Int'l Union, Local 2 v. Wash. Metro. Area Transit Auth.*, 569 F. Supp. 797, 798 (D.D.C. 1983) ("Before approaching WMATA's motion for summary judgment on these causes of action, this Court must first ascertain whether there exists subject matter jurisdiction. The well-worn expression, 'hornbook law,' aptly describes the proposition that the assertion of subject matter jurisdiction is open to question at any time, even on appeal by the court on its own initiative.

---

[1] Transparently, the WCP Parties had long hoped that either (a) mediation would be fruitful or (b) the Plaintiff would simply dismiss this case as to the WCP Parties, preserving the claims that pend against the WCP Parties' co-defendants. The WCP Parties, rather genuinely, took this position both because (i) they sincerely do not believe the case against them to have merit; and (ii) they equally recognize a jurisdictional flaw to have been potentially curable through dismissal and, as such, to not necessarily irreparably mar the case against their co-defendants.

6

At least since the decision of *Louisville & Northern Railway v. Mottley*, 211 U.S. 149 (1908), which has been 'repeatedly . . . reaffirmed,' the Supreme Court has held that neither the acquiescence of the court nor the consent of the parties can confer such jurisdiction upon a federal district court when none exists.") (quoting *Morris v. Washington Metropolitan Area Transit Authority*, 702 F.2d 1037, 1040 (D.C. Cir. 1983) (quoting *Sumner v. Mata*, 449 U.S. 539, 548 n. 2 (1981)); *S.F. Herring Ass'n v. United States DOI*, 683 F. App'x 579, 581 (9th Cir. 2017) ("This appeal comes to us at the summary judgment stage. However, 'If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'") (quoting Fed. R. Civ. P. 12(h)(3)).

The Plaintiffs rely on the matter of *Thomas Am. Corp. v. Fitzgerald*, 175 F.R.D. 462 (S.D.N.Y. 1997) for the proposition that sanctions may be applied against counsel when a motion stemming from an absence of subject matter jurisdiction is made late in a case, for purposes of delay. Opposition, DE #68, at p. 5. Yet, quite notably, that is a case where the alleged absence of subject matter jurisdiction was "frivolous." *Id.* at 465. And the frivolous motion was not one rooted in an absence of diversity jurisdiction but, rather, an absence of federal question jurisdiction stemming from intellectual property matters:

> . . . it was ludicrous to suggest that plaintiff could not initiate a declaratory judgment action against this defendant, who has claimed infringement of a variety of patents and trademarks in a variety of courts, for infringement of a mark which was very similar to another mark which he had accused plaintiff of infringing.

*Id.* at 465-66.

Of course sanctions may flow from the filing of a "frivolous" motion that sets forth a "ludicrous" proposition. Yet no one is alleging the instant Motion to be "frivolous," nor is anyone suggesting an absence of jurisdiction to be "ludicrous." To the contrary, as noted *passim*, no one seems to actually dispute that WCP is a citizen of Maryland for diversity purposes. And, equally,

no one is arguing that WCP's Maryland citizenship serves to defeat diversity jurisdiction. Or, stated otherwise, *Fitzgerald* is not merely inapposite: *Fitzgerald* is of absolutely no moment to the Motion.

Equally, however, the notion that the Motion is imposed for purposes of delay is fundamentally misplaced. While the WCP Parties very well could have urged discovery cease while the Motion is pending, *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001), they did not do so and, instead, have continued to participate in discovery. It is, quite genuinely, difficult to understand what "delay" has been occasioned by the Motion, let alone how the Motion denotes the WCP parties "unreasonably and vexatiously delaying the proceedings and imposing motions after an unreasonable delay." Opposition, DE #68, at p. 6.

What the Plaintiffs seem to be positing, rather, is that any effort to meaningfully defend this case—including an effort to raise a jurisdictional flaw preserved in an original answer—is contra to the Plaintiffs' efforts to realize a favorable judgment. Such may well be, but such is a far cry from bad faith.

### III.   Argument: Only Severing WCP Will Not Cure the Issue

The Opposition suggests that WCP may be simply severed under Rule 21, in lieu of this case being dismissed. Opposition, DE #68, at p. 4. The WCP Parties do not take issue with the notion that a flaw in diversity jurisdiction may be cured by excising one or more parties. But the suggestion that such may be achieved by solely severing WCP is misplaced.

If only WCP is removed from this case, two additional issues will manifest. First, and unsurprisingly, WCP 4910 is owned by WCP and, as such, suffers the same jurisdictional issue as WCP. (It also bears notation that WCP 4910—an entity formed on June 23, 2022—is being sued

for unjust enrichment in connection with a transaction that occurred in July 2020. *See* First Amended Complaint, DE #36, at ¶¶ 34-58.) And, second, records produced in discovery show WCP was the only one of the three WCP Parties to have actually loaned monies in the at-issue transaction.

These may well be issues for another day. If the Plaintiffs wish to simply remove WCP, there is no objection from DPCL or WCP 4910 to the Plaintiffs doing so (though the WCP Parties assuredly do not speak for District Title, which might have certain resultant rights, *see Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 709 (E.D. Pa. 2022)). But, especially in the context of an Opposition that accuses the WCP Parties of manifest bad faith, it merits emphasis that doing so will simply invite a construct whereby (i) WCP 4910 will then file a separate motion observing WCP 4910 is, too, not diverse, whilst also likely noting the temporal impossibility of the case against WCP 4910; and (ii) DPCL will also then seek summary judgment on the very basic premise that it could not have conceivably been unjustly enriched through a loan transaction in which it was neither a lender nor borrower.

**IV.     Argument: If Sanctions are to be Considered, a Separate Motion Should be Filed**

Finally, some attention is properly paid to the oddity of a brief in which the Plaintiffs (i) seemingly offer to sever WCP, in hopes of curing a jurisdictional defect; and (ii) campaign for sanctions against the WCP Parties for raising a jurisdictional defect. These positions appear to be incongruous. But, to the extent that sanctions under 28 U.S.C. § 1927 are going to be entertained, the WCP Parties and their counsel respectfully ask that such be done through separate motions practice. By law, such sanctions are against counsel—not a client. If such relief is merely to be sought against the WCP Parties themselves, the unavailability of such sanctions can be noted as part of a more thorough defense to a proper motion. But if sanctions are truly being sought against

undersigned counsel, the formality of a freestanding motion—replete with the time to respond thereto—is requested for the simple reason that undersigned counsel will need to place his firm's professional liability insurance carrier on notice of such and afford time for the carrier to respond accordingly.

Importantly, Section 1927 sanctions are solely applicable to attorneys. *See, e.g.*, *Huthnance v. District of Columbia*, 793 F. Supp. 2d 177, 180-81 (D.D.C. 2011) ("Under 28 U.S.C. § 1927, a court 'may,' but need not, sanction (1) **an 'attorney or other person admitted to conduct cases' in federal court** (2) who 'multiplies the proceedings . . . unreasonably and vexatiously' (3) with 'the excess costs, expenses and attorneys' fees' (4) 'reasonably incurred' by an opposing party 'because of such conduct.'" (quoting 28 U.S.C. § 1927) (emphasis added).

Plainly, none of the WCP Parties are attorneys or "other person[s] admitted to conduct cases[] in federal court." The WCP Parties are, rather, private lending-related entities. So a motion for sanctions, under Section 1927, cannot be brought against them.

Undersigned counsel, by contrast, is certainly an attorney and someone admitted to appear in this Honorable Court. Yet, in opposing sanctions under Section 1927, there is some import in affording specific notice to the intended target. *See, e.g., Alexander v. FBI*, 541 F. Supp. 2d 274, 300 (D.D.C. 2008) ("The Court also appropriately observed that before counsel or other individuals could be made personally liable for sanctions, they would first have to be given 'specific notice' and 'an opportunity to be heard.' Because such notice has never been provided, indeed, because the Court has consistently advised EOP and its counsel that it is not considering sanctions against individual attorneys, no sanction can be levied here under Section 1927 as a matter of law.") (citing *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96-97 (2d Cir. 1997); *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995)) (internal citation omitted).

Here, the Opposition seeks sanctions against the WCP Parties, not their counsel. *See* Opposition, DE #68, at p. 6 ("Accordingly, Plaintiffs respectfully request that the Court award attorney's fees and costs reasonably incurred in responding to this Motion and impose sanctions on the WCP Entities for unreasonably and vexatiously delaying the proceedings and imposing motions after an unreasonable delay.").

To be clear, this is raised not as a smart-alecky effort to avoid substantively briefing a sanctions issue. As is likely manifest from the balance of this brief, undersigned counsel does not believe the conduct in question to be wrong—let along sanctionable. But this is raised, instead, because if counsel is going to be the target of a sanctions motion, he will need to place his insurance carrier on notice, see if his carrier wishes to appoint counsel, and allow any such appointed counsel time to come up to speed on the case. If that is what the Plaintiffs seek—in response to a motion that simply follows through on an affirmative defense raised in the WCP Parties' answer—such is certainly the Plaintiffs' prerogative. But before those steps are taken—and before undersigned counsel pays a deductible and invites the invariable increase in his firm's insurance premiums—it would seem some greater clarity would be appropriate.

Finally, that this brief does not contain a full-throated defense to the request for sanctions—aside from noting the WCP Parties to be ineligible for such sanctions under Section 1927—is not

an oversight.[2] If sanctions are going to be sought against counsel, he does not wish to prejudice any defense by responding without his own counsel.

V.      **Conclusion**

WHEREFORE, the WCP Parties respectfully pray this Honorable Court (i) dismiss this case, for lack of subject matter jurisdiction; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: June 11, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for DP Capital LLC, WCP Fund I LLC, and WCP 4910 Georgia Ave NW LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of June, 2025, a copy of the foregoing was served via this Honorable Court's CM/ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

---

[2] To the extent the Plaintiffs seek sanctions under Rule 11, it bears notation that they did not comply with the shelter provisions thereof despite, after being served with the Motion, having more than 21 days before docketing the Opposition. *See* Fed. R. Civ. P. 11(c)(2) ("The motion must be served under Rule 5 , but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). If the Plaintiffs wish to docket a Rule 11 motion against the WCP Parties, they must first serve a copy and allow the 21 days to run. And if they wish to docket such a motion against counsel, they must similarly do so.